**INTERNATIONAL INSURANCE CO., Plaintiff,**

v.

**STONEWALL INSURANCE CO., and Crown Equipment Corp., Defendants.**

**No. C–1–93–0640.**

United States District Court, S.D. Ohio, Western Division.

Sept. 20, 1994.

Edward Ronald Goldman, Rendigs, Fry, Kiely & Dennis, Cincinnati, OH, for International Ins. Co.

Glenn Virgil Whitaker, Vorys, Sater, Seymour & Pease, Cincinnati, OH, for Stonewall Ins. Co.

John Elton Tate, New Breman, OH, for Crown Equipment Corp.

## ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING DEFENDANT'S CROSS–MOTION FOR JUDGMENT ON THE PLEADINGS

SPIEGEL, District Judge.

This matter is before the Court on the Plaintiff's Motion for Judgment on the Pleadings (doc. 12), the Defendant Stonewall's Opposition to the Plaintiff's Motion for Judgment on the Pleadings and Cross–Motion for Judgment on the Pleadings (doc. 19), Plaintiff's Opposition to the Defendant's Cross–Motion for Judgment on the Pleadings and Reply in Support of its Motion for Judgment on the Pleadings (doc. 21), and Defendant's Reply in Support of its Cross–Motion for Judgment on the Pleadings (doc. 22), Motion by Plaintiff to Strike the Affidavit of Vincent J. Di Stephano, Jr. (doc. 24), Motion of Defendant, Stonewall for Leave to Amend Answer (doc. 25), Memorandum of Stonewall Insurance Company Contra Motion of International Insurance Company to Strike Affidavit of Vincent J. Di Stephano, Jr. (doc. 27), Plaintiff's Reply in Support of Motion to Strike (doc. 28), Plaintiff's Memorandum in Opposition to Defendants' Motion for Leave to Amend (doc. 29).

## BACKGROUND

In this diversity of citizenship action, Crown Equipment Corporation ("Crown"), the insured, is an Ohio corporation. Crown has insurance coverage policies from both the Plaintiff, International Insurance Company ("International") which is an Illinois corporation and from its Co–Defendant, Stonewall Insurance Company ("Stonewall"), which is an Alabama corporation. The Plaintiff has filed this action for declaratory judgment of its duties under its policy. The Defendant, Stonewall, has also moved for judgment on the pleadings. These parties agree that this matter is amenable to resolution by the Court, as a matter of law, on facts agreed to by all.

Crown's policy with International obligates the insurer to "pay on behalf" of Crown the "ultimate net loss in excess of the retained limit". This policy was limited to an aggregate amount of $5 million per occurrence. Additionally, Crown's policy with Stonewall was an umbrella policy with an aggregate amount of $5 million for each occurrence. Crown's policy with Stonewall was not to attach until the underlying insurer (International) had paid its full amount.

Crown manufactures equipment, in particular fork lift trucks. Prior to the instant action, Crown was named as a Defendant in *Hopper v. Crown Equip. Corp.* That was a products liability suit, filed in Louisiana state court and decided for the Plaintiff, Mr. Hopper. Mr. Hopper was awarded $4,282,808.26 as well as pre-judgment and post-judgment interest. The pre-judgment interest amounted to $2.9 million while the post-judgment interest has yet to be determined. In total, Crown is liable to Mr. Hopper for no less than $7.1 million.

The issue before the Court is whether the primary insurer, International, is liable for pre-judgment interest in excess of its policy limits. The question poses interesting questions concerning the choice of law to be applied.

## DISCUSSION

### I. Cross Motions for Judgment on Pleadings

■ Both parties have now moved for judgment on the pleadings. Resolving the issue at hand, that is, whether the interest awards are included within International's $5 million coverage limit, requires a determination of what state's law applies. It is well established law in Louisiana that insurers are liable for pre-judgment interest in excess of any policy limit. *Robichaux v. Randolph,* 555 So.2d 581, 587 (La.Ct.App.1989); *Moon v. City of Baton Rouge,* 522 So.2d 117 (La.Ct.App.1987); La.Rev.Stat. 13:4203. Under Ohio law, it is similarly well established that the insurer is *not* liable for interest in excess of the policy limit. *Phoenix Phase I Associates v. Ginsberg, Guren & Merritt,* 23 Ohio App.3d 1, 4–5, 490 N.E.2d 634 (1985). The parties acknowledge that if Louisiana insurance law is applied, then the Plaintiff is liable for the entire amount at issue. However, if Ohio insurance law is applied, then the Plaintiff is not liable for the interest amount which exceeds its $5 million coverage limit.

### A. *OHIO CHOICE OF LAW RULES*

■ It is undisputed that this Court should apply Ohio's choice of law rules to determine what substantive law should prevail. A federal court sitting in diversity must apply the law of conflicts of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Tele–Save Merchandising Co. v. Consumers Distrib. Co.,* 814 F.2d 1120, 1122 (6th Cir.1987).

■ Ohio law states that when the parties have not contracted to apply a particular state's laws, the choice of law determination should be made based on the law of the state with the most significant relationship to the contract. *National Union Fire Ins. Co. v. Watts,* 963 F.2d 148, 150 (6th Cir.1992). Ohio courts have adopted the test set forth in Restatement (Second) of Conflicts § 188, to determine which state has had the more significant relationship. *Id.* at 150–151; *Nationwide Mut. Ins. Co. v. Ferrin,* 21 Ohio St.3d 43, 44–45, 21 OBR 328, 487 N.E.2d 568 (1986); *Gries Sports Enterprises, Inc. v. Modell,* 15 Ohio St.3d 284, 15 OBR 417, 473 N.E.2d 807 (syllabus) (1984), *cert. denied,* 473

U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985).

Restatement (Second) of Conflict of Laws § 188 states that in determining the state whose law should be applied to a contract, a court should first apply the general conflict of laws provisions of Restatement (Second) of Conflict of Laws § 6. Section 6 states that:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems;

(b) the relevant policies of the forum;

(c) the relevant polices of other interested states and the relative interests of those states in the determination of the particular issue;

(d) the protection of justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability, and uniformity of result; and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflicts § 6 (1971); *National Union Fire Ins. Co. v. Watts,* 963 F.2d at 151 (applying Ohio choice of law rules).

Section 188 then articulates that

the contacts to be taken into account in applying the principles of Section 6 to determine the law applicable to an issue include:

(a) place of contracting,

(b) place of negotiations of the contract,

(c) place of performance,

(d) location of the subject matter of the contracts, and

(e) the domicile, residence, nationality, place of incorporation, and place of business of the parties.

Restatement (Second) of Conflicts § 188.

As noted, these Section 188 factors for determining the choice of laws for contract interpretation are to be considered in light of the general choice of law rules articulated in the Restatement (Second) of Conflicts § 6.

## B.   ANALYSIS

### 1.   Section 6, Restatement (Second) of Conflicts of Law

■ The principles of Section 6 of the Restatement of Conflicts, when considered in conjunction with Section 188, favor the application of Louisiana law in this case. First, we will consider the relevant factors under Section 6(2). Factors (a) and (e) favor neither Ohio nor Louisiana law, as the laws of both states though antithetical to each other, equally serve to meet the needs and policies of the insurance field generally. Factors (f) and (g) are likewise indeterminative because this case will not substantially aid in achieving uniformity or affect future decisions in either forum.

Factors (b), (c) and (d) are more useful in determining whether Ohio or Louisiana law should prevail. Factor (b) directs the Court to consider "the relevant policies of the forum." On its face, this seems to favor Ohio, the forum state, because one of the parties, Crown, is an Ohio resident. None of the insurance companies are Ohio residents and the injured party, Mr. Hopper is a Louisiana resident. Ohio has an interest in seeing that its insured companies are properly covered. However, under the facts of this case Ohio's interests are rather attenuated, because regardless of the choice of law, Crown will be covered by one of the insurance companies. In fact, if Louisiana law is applied Crown will be entitled to more coverage than if Ohio law is followed. Therefore, if the relevant Ohio policy is to protect its citizen, the insured, then factor (b) is not determinative.

Factor (c) of Section 6 counsels us to consider "the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue." This factor favors Louisiana because Mr. Hopper is a Louisiana resident and Louisiana has an interest in seeing that its citizens are protected. Although Mr. Hopper will be fully compensated in this case no matter which law prevails, it is evident that this would not always be the case. For

example, in any case where the award exceeds the limits of a policy, then the Louisiana rule would strongly favor its injured citizen. In that situation, Louisiana would require the payment of the policy limit plus pre-judgment interest on the amount of the policy limit. Ohio would require only payment of the policy limit. In addition, a rule which limits pre-trial interest to the policy limits could encourage deliberate delay, as a claim approaches the limits of the policy. Therefore, factor (c) favors Louisiana law.

■ Factor (d) of Section 6(2) of the Restatement (Second) of Conflicts focuses on "the protection of justified expectations." Of course, different parties as well as different jurisdictions would have different expectations. Louisiana has a strong expectations that its citizens be protected from defective machinery and that its citizens be compensated by out of state insurers in accord with its insurance laws. Louisiana's expectations strongly favor the application of Louisiana law. Ohio's legitimate expectation is that its insured companies would receive the coverage for which they bargained and paid. These expectations would be served by the application of either Louisiana or Ohio law. However, as noted above, Louisiana law is more favorable to the Ohio insured than Ohio's own insurance law.

From the point of view of the expectations of the parties to this lawsuit, it is irrefutable that Crown expected that it would be liable under the laws of any of the states in which its products were sold. The insurance companies vigorously dispute the question of their own legitimate expectations. The Plaintiff claims that its expectation was that Ohio insurance law would apply. This argument is based on the Plaintiff's contention that since they had no duty to defend, but only the duty to "pay on behalf of" Crown Equipment, then the only jurisdiction whose laws they expected to be subject was Ohio, because Ohio was the location where the Plaintiff's client resided. Stonewall argues that the nature of the coverage which the Plaintiff offered, even without a duty to defend, made the Plaintiff susceptible to the laws of various jurisdictions.

Crown Equipment sells its fork lifts throughout the United States. Therefore, Crown could potentially be sued in any of these states and could be held liable under the tort laws of any of these states. The Plaintiff, through its agreement to pay on behalf of Crown, agreed, at least indirectly, to subject itself to these multiple jurisdictions. The Plaintiff should have anticipated that it would be subject to the laws of the forum in which any claim against Crown arose. In fact, this is reflected in the insurance policy itself, which states that the Plaintiff's duty was to "pay on behalf of the insured, the ultimate net loss ... which the insured may sustain by reason of the liability *imposed upon the insured by law*, or assume by the insured under contract, ...." (emphasis added). Thus, the Plaintiff's policy anticipated that there was an expectation of exposure to the penalties imposed by the laws of the states where the insured operated. In addition, the insurance contract provided that "[i]n any jurisdiction where, by reason of law or statute, this policy is invalid as a 'pay on behalf' of contract, the Company agrees to indemnify the insured." Thus, the Plaintiff's policy acknowledged that the law of different jurisdictions may apply in different suits.

The Sixth Circuit Court of Appeals addressed the issue of expectations of an insurance company offering coverage nationwide in *National Union Fire Ins. Co. v. Watts*, 963 F.2d 148 (6th Cir.1992). In that case the insured was a nation-wide moving and storage company, which had been sued for an accident in a jurisdiction outside its home state. The court found that where an insurance contract extended coverage across the United States and omitted a choice of law provision, that omission "mean[t] that the insurer intended its coverage to be governed by the state in which the claimant was using his vehicle." *Id.* at 152.

In the case at bar, International certainly expected that in regard to the determination of its insured's liability, and by extension of its own liability, the law of the forum where a claim was made would govern. Therefore, under the principles of factor (d) of Section 6 of the Restatement (Second) of Conflicts of Law, the parties legitimate expectation was

that Louisiana law would govern with regard to an injury occurring in Louisiana. The factors enumerated in Restatement (Second) of Conflicts of Law § 6, taken together favor Louisiana law.

### 2. Section 188, Restatement (Second) of Conflicts of Law

As we have seen, when the law in question involves the interpretation of a contract, Ohio choice of law principles further counsel the application of the factors in Restatement (Second) of Conflicts of Law § 188. *See National Union Fire Ins. Co.,* 963 F.2d 148, 151 (6th Cir.1992); *Nationwide Mut. Ins. Co. v. Ferrin,* 21 Ohio St.3d 43, 44–45, 21 OBR 328, 487 N.E.2d 568 (1986); *Gries Sports Enterprises, Inc. v. Modell,* 15 Ohio St.3d 284, 15 OBR 417, 473 N.E.2d 807 (syllabus) (1984), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985).

Factor (a) of Section 188 directs this Court to consider "the place of contracting," while factor (b) directs us to consider "the place of negotiations of the contract." The comments to Section 188 provide the Court with guidance on these factors:

> [T]he place of contracting is a relatively insignificant contact.... The place of negotiation ... is of less importance where there is no one single place of negotiation and agreement, as for example, when the parties do not meet but rather conduct their negotiations from separate states, by mail or telephone.

Restatement (Second) of Conflicts § 188 cmt. e (1971). In the situation at hand, it has been suggested without refutation that negotiations were done by telephone in Georgia, England and Ohio. This information would render the first two factors inconclusive.

■ On the other hand, factor (c), "the place of performance", is earnestly argued by the parties. The Plaintiff, International argues that place of performance is not important in this case because the comments to Section 188 state that "the place of performance can bear little weight in the choice of applicable law when ... at the time of contracting it is either uncertain or unknown." *Id.* When the parties entered into the insurance agreement here in question the place of

performance was, in a certain sense, uncertain. However, the place of performance was certain to the extent that it was known to be a place where Crown does business and subjects itself to a potential claim. *See Revco D.S. Ins. v. Government Employees Ins. Co.,* 791 F.Supp. 1254, 1263 n. 11 (N.D. Ohio 1991) (holding that when insurance contracts cover the insured in whatever location it does business, the place of performance is "any state where [insured] might be subject to liability"). Furthermore, under the language of the insurance contract between International and Crown, International is obligated to "pay on behalf" of Crown. Since Mr. Hopper lives and won his suit in Louisiana, the location of the payment is in Louisiana. Because Louisiana is the location where International is to make payments and where Crown does business, it is the place of performance.

Each of the parties has placed considerable significance on this "place of performance" factor. The Restatement, Section 188's preference for the law of the place of performance is consistent with the general importance placed on this factor in Ohio choice of law principles:

> Generally, Ohio follows the rule that where a conflict of law issue arises in a case involving a contract, the law of the state where the contract is to be preformed governs, * * * [Citation omitted.] Some courts have noted that the rationale for this rule is that the place of performance bears the most significant relationship to the contract.

*Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.,* 6 Ohio St.3d 436, 438, 6 OBR 480, 453 N.E.2d 683 (1983) (quoted in *Modell,* 15 Ohio St.3d at 286, 15 OBR 417, 473 N.E.2d 807); *see also Watts,* 963 F.2d at 152. The Plaintiff contracted to "pay on behalf of the insured, the ultimate net loss ..., which the insured may sustain by reason of the liability imposed upon the insured by law, or assume by the insured under the contract, for: ... (a) bodily injury liability, (b) personal injury liability ... arising out of an occurrence." In this case, we find that the place of the performance was the State of Louisiana.

Factor (d) of Section 188 of the Restatement (Second) of Conflicts of Law was also hotly contested by the parties. This factor is "the location of the subject matter of the contract." The Plaintiff begins by noting that its insurance policy contained no duty to defend. The policy, according to the Plaintiff, is strictly an indemnity policy. Therefore, the Plaintiff states that its insurance policy is in effect a policy to protect the insured's assets from depletion. Thus, the Plaintiff argues that the subject matter of the contract is the insured risk. The Plaintiff contends that the location of the insured risk is Ohio, where Crown's assets are held.

Stonewall again disputes the Plaintiff's claim that this is strictly an indemnity policy, because the insurance agreement uses the language "pay on behalf of" rather than language of indemnification. Furthermore, Stonewall argues that even if the policy is considered to be an indemnity policy, the location of the risk is the area where Crown's fork lifts are operated. Wherever Crown's equipment is used, Crown could be sued for injuries incurred through use of the equipment. Stonewall argues that the "location of the subject matter of the contract" is the location of this risk of suit, which is anywhere where Crown equipment is used. Specifically, under the facts of this case, the actual location of the subject matter is the location of Crown's liability to Mr. Hopper, that is, Louisiana.

As support for its claim, the Plaintiff relies heavily on *Babcock & Wilcox v. Arkwright–Boston Manufacturing Mutual Ins. Co.*, 91–CV–987 (N.D. Ohio, 1993) (Bell, J.).[1] In that case, the court was faced with a choice of law question similar to the one facing this Court. The policy in question there, like International's policy, did not require the insurer to defend. The *Babcock & Wilcox* court held that

> the only performance by the insurers that is called for by the contract is to pay, to the "Assured which sustains the loss", all sums for which that insured becomes liable as a result of the occurrences covered in the contract. Thus, the true subject matter of the contract is the protection of the assets of each individual insured. The risk insured against for B & W [the insured] is not the risk of claims being made against B & W, but the risk of claims being paid for by B & W and the resulting depletion of its assets.

*Id.* at 14. Initially, it would seem that the application of the *Babcock & Wilcox* holding to the case now before us would require a finding that the insured risk was the assets of Crown, which all agree are located in Ohio. However, on closer examination, we find that *Babcock & Wilcox* must be distinguished from the case at bar in several respects. First an agreement to "pay to the '[a]ssured which sustains the loss'" focuses on the Ohio insured's losses, while the International's agreement to "pay on behalf of" the policy holder describes a direct contact with the tort victim in whatever jurisdiction the victim is found.

More importantly, the *Babcock & Wilcox* decision involved numerous claims, both present and future, in various jurisdictions, as opposed to one distinct, known claim. Babcock & Wilcox is an Ohio company that had manufactured a boiler which contained asbestos. They had faced and were facing a legion of claims. Since Babcock & Wilcox was confronted with insolvency because of these claims, the court focused on the depletion of the insured's assets, which were primarily located in Ohio. The court's interpretation allowed Babcock & Wilcox to obtain coverage from the defendant, a secondary excess liability carrier, providing significant extended coverage both to Babcock & Wilcox and to the asbestos plaintiffs. This emphasis of concern for the insolvency of Babcock & Wilcox is supported by the cases cited by the *Babcock & Wilcox* court.[2]

---

1. This is the citation supplied to us by the Plaintiffs. This order is unpublished, and is attached to Plaintiff's Motion for Judgment on the Pleadings, Document 12, Exhibit E. As found there the case is reprinted from Mealey's Litigation Reports, Insurance, Vol. 6 # 39, 8/18/92, Mealy Publications, Inc. Wayne, Pa. For convenience, we will refer to pages as reprinted in Mealey's.

2. *See Eagle–Picher Industries v. Liberty Mutual Ins. Co.*, 829 F.2d 227, 248 (1st Cir.1987) (Ohio law applied in insurance coverage dispute over asbestos-related claims because the question of

Furthermore, since the asbestos claims against Babcock & Wilcox were spread throughout the country, the actual location of the injuries did not present the court with a attractive alternative for the location of the insured risk. In fact the *Babcock and Wilcox* court was not presented with any strong alternative to Ohio, the location of the insured assets, as the location of the insured risk. The court did the required analysis under Section 6 and Section 188 of the Restatement (Second) of Conflicts of Law and resolved nearly every factor in favor of Ohio on various grounds. Conversely, in the case at bar, we have seen that the Section 6 and Section 188 factors tip in favor of Louisiana. Finally, the *Babcock & Wilcox* court said

> In the present case, assuming that Louisiana is the place of contracting [which itself was disputed], this factor stands alone as the only significant contact with Louisiana.

*Id.* at 25. Therefore, the district court in *Babcock & Wilcox* was confronted with facts which make that case distinguishable from the case now before this Court.

Other courts have also held differently than *Babcock & Wilcox* on the issue of the subject matter of an insurance contract such as the one under consideration here. *See General Accident Ins. Co. v. Insurance Co. of North America,* 69 Ohio App.3d 52, 59, 590 N.E.2d 33 (Cuyahoga Cty.1990) (where insurance extends to "all operations," then no principle location of insured risk); *Borden, Inc. v. Affiliated FM Ins. Co.,* 682 F.Supp. 927, 929 (S.D. Ohio 1987) (Graham, J.) (subject matter held to be wherever Borden conducted business); *Compagnie des Bauxites de Guinee v. Argonaut–Midwest Ins. Co.,* 880 F.2d 685, 690 (3rd Cir., 1989) (in the case of risk of liability rising out of a product liability suit, the risk travels with the product). Returning to the case at bar, we take guidance from these cases, rather than from *Babcock & Wilcox,* which we have distinguished above. Therefore, the "location of the sub-ject matter of the contract" is wherever Crown was subject to liability, that is, throughout the country.

The final factor under Section 188 is "(e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Crown, the insured is both incorporated and located in Ohio. This factor tends to favor choice of Ohio law. However, this factor has not been strenuously argued by the parties, nor need be given special weight. "[T]he fact that one of the parties is domiciled or does business in a particular state assumes greater importance when combined with other contacts,...." Restatement (Second) of Conflicts § 188 cmt. e (1971). Thus, the fact that Crown does business in Louisiana is as relevant as the fact that its principal place of business is in Ohio, because Louisiana is also the place of performance. The Restatement's preference for the law of the place of performance is consistent with the general Ohio choice of law rule that the law of the state where the contract is performed should govern. *National Union Fire Ins.,* 963 F.2d at 152; *Gries Sports Enterprises Inc. v. Modell,* 15 Ohio St.3d at 286, 15 OBR 417, 473 N.E.2d 807.

This is a complex and difficult case. The choice between Louisiana and Ohio law is clearly conclusive of this lawsuit. That choice, however, has not been nearly as clear cut. Ohio choice of law principles require a weighing of factors, some of which have favored the Plaintiff but more have favored Stonewall. In light of our analysis of the factors articulated by Sections 6 and 188 of the Restatement (Second) of Conflicts of Law, we find that the overall balance tips toward the choice of Louisiana Law.

## II. Motions to Strike and to Amend

In its arguments for judgment on the pleadings the Defendant Stonewall has raised an estoppel argument. Briefly, Stonewall argues that the Plaintiff should be estopped from arguing that Ohio law should always

---

whether an Ohio manufacturer is entitled to reimbursement, and to what extent, for the many millions of dollars in claims paid as a result of injuries caused by its products is or major concern to the state in which the business is domiciled) (parenthetical quoted from *Babcock & Wilcox,* at 12); *Unigard Security Ins. Co. v. North River Ins. Co.,* 762 F.Supp. 566, 589 (S.D.N.Y. 1991) ("In the mass tort context, the state where the insured is located has been held to be the state having the greatest interest in the application of its law concerning insurance coverage.") (parenthetical quoted from *Babcock & Wilcox,* at 13).

apply in resolving disputes involving the subject policy. Stonewall indicates that they believe that discovery will reveal that the Plaintiff has taken a contrary position in other lawsuits brought against Crown in other jurisdictions. To support this claim Stonewall offers the affidavit of Vincent J. De Stefano, Jr. who is counsel for Stonewall. Mr. De Stefano swears that to the best of his knowledge and belief the Plaintiff "may not have insisted on application of Ohio law to determine its obligations to Crown under the subject policy of insurance." Stonewall states that it was unwilling to present this defense in its original Answer for lack of knowledge, but having been confronted with the Plaintiff's arguments, Stonewall asks for leave to amend its Answer to include the defense of estoppel. The Plaintiff vigorously opposes both the consideration of Mr. De Stefano's affidavit and Stonewall's Motion to Amend. Having reached our decision on the pleadings, as requested by both the Plaintiff and Stonewall, we need not decide these motions, as they are now moot.

## CONCLUSION

The Restatement (Second) of Conflicts § 6 supports the application of Louisiana law to the case at hand because both the expectations of the parties and the interests and policies of Louisiana favor Louisiana law. The Restatement (Second) of Conflicts § 188 likewise favors Louisiana law because Crown does business in Louisiana and Louisiana is the place of performance. For these reasons, under Ohio choice of law rules, Louisiana has the most significant relationship to the contract. Therefore, we find that International is liable for the entire *Hopper* judgment, including pre-judgment interest in excess of the policy limit, less Crown's self-insured retention.

Accordingly, the Plaintiff's Motion for Judgment on the Pleadings is DENIED and the Stonewall's Cross–Motion for Judgment on the Pleadings is GRANTED. Therefore, we find that the Plaintiff is liable to "pay on behalf of" the Defendant Crown Equipment the amount of $4,282,808.26, as well as pre-judgment interest on that sum in the amount awarded to Mr. Hopper in the underlying Louisiana litigation titled *Hopper v. Crown Equipment, Co.*, which the Plaintiff has stated is approximately $2,900,000.

SO ORDERED.