**SKY TECHNOLOGY PARTNERS, LLC, Plaintiff,**

v.

**MIDWEST RESEARCH INSTITUTE, et al., Defendants.**

**No. 2:00–CV–719.**

United States District Court, S.D. Ohio, Eastern Division.

Dec. 21, 2000.

Richard Michael Clark, Columbus, OH, for plaintiff.

Paul Alan Wolfla, Squire, Sanders & Dempsey, Columbus, OH, Michael W. Rhodes, Lathrop & Gage, Kansas City, MO, for defendants.

## OPINION AND ORDER

HOLSCHUH, District Judge.

This is a diversity action, removed to this Court, in which plaintiff asserts claims of breach of contract, promissory estoppel, fraud and conversion in connection with the alleged agreement that plaintiff would develop and operate a web site to auction specialty chemicals, for which plaintiff was to receive a 10 percent equity interest in the new company. This matter is now before the Court on defendants' motion to dismiss for improper venue under 28 U.S.C. § 1406(a) or, in the alternative, to transfer this action to the United States District Court for the Western District of Missouri pursuant to 28 U.S.C. § 1404(a), and for a more definite statement.

### I. Background

Plaintiff, SKY Technology Partners, LLC ["SKY"], is a Kansas limited liability company with its principal place of business in Columbus, Ohio.[1] *Complaint*, ¶ 1. SKY is in the business of designing and marketing e-commerce systems. *Id.* Plaintiff names as defendants Midwest Research Institute ["Midwest"] and Chemfinet, Inc. ["Chemfinet".][2] Midwest is a Missouri nonprofit company with its principal place of business in Kansas City, Missouri. *Id.*, ¶ 2. Midwest is in the business of providing applied research and technical services to businesses and government, including services in the field of chemical sciences. *Id.* Chemfinet is a Delaware corporation with its principal place of business in Kansas City, Missouri. *Id.*, ¶ 3. Chemfinet is in the business of operating an internet trading company to match buyers and sellers of fine and custom chemicals. *Id.*

Plaintiff alleges that, in August 1999, Midwest approached SKY regarding the possibility of forming a joint venture to create a new business enterprise. *Id.*, ¶ 4. This enterprise, Chemfinet, would develop and operate a web site to auction specialty chemicals. *Id.*, ¶ 5. According to plaintiff, Midwest would contribute the initial funding for expenses, expertise in chemical sciences and sponsorship of the new venture, while SKY would contribute its expertise in internet business strategy and web site development and design. *Id.* Plaintiff alleges that it expressed interest in forming such a venture with Midwest and submitted a proposal whereby SKY would design and develop a sophisticated interactive web site. *Id.*, ¶ 6. The proposal provided that, under Phase I, SKY would begin the process of design and development of the web site, including development of the business logic, architecture and the screen shots of the site. *Id.*, ¶ 7. The proposal provided for a flat fee of $30,000 for completion of Phase I, which plaintiff contends is a rate much lower than market value for similar services. *Id.*, ¶ 8. Under plaintiff's

---

1. Defendants challenge the assertion that SKY's principal place of business is located in Columbus, Ohio.

2. Plaintiff originally named as a defendant ChemSource Services, Inc., whose name was changed on April 18, 2000 to Chemfinet, Inc. *Defendants' Memorandum in Support of the Motion to Dismiss or Transfer and for a More Definite Statement,* at 2.

proposal, plaintiff would then develop a prototype of the web site with a level of functionality suitable for presentation to potential investors. *Id.*, ¶ 9. This Phase II would also include development, programming, and text content on the site. *Id.* SKY proposed to charge an hourly fee of $80.00 per hour in connection with Phase II of the venture, which plaintiff contends would merely cover its costs. *Id.* Plaintiff also proposed that it would take a 25 percent equity interest in the newly formed Chemfinet. *Id.*

According to plaintiff, Midwest agreed to the monetary terms of SKY's proposal but offered only a 10 percent equity interest in Chemfinet, which SKY accepted. *Id.*, ¶ 10. Plaintiff contends that it not only began developing the site, but began bringing in possible sources of funding, making presentations in conjunction with Midwest, and introducing persons to Midwest who were ultimately hired as the first president and vice president of Chemfinet. *Id.*, ¶¶ 10–11.

Plaintiff further alleges that Midwest and SKY had planned to unveil the web site at the INFORMEX Conference and Symposium, which was attended by representatives of companies and agencies in the chemical industry. *Id.*, ¶ 12. Plaintiff contends that it completed the development and programming of the web site in time for the scheduled launch of the Chemfinet site in February 2000, despite last-minute changes by Midwest and Midwest's failure to deliver the text content of the site in a timely manner. *Id.*, ¶ 11.

SKY noticed that no one accessed the site during the INFORMEX conference. *Id.*, ¶ 13. After the conference, SKY learned that defendants had retained another company, MHE, to program the prototype web site that SKY had developed and designed. *Id.*, ¶ 14. According to plaintiff, defendants used this alternate site for the launch of Chemfinet at the INFORMEX conference. *Id.*, ¶ 15. Plaintiff contends that defendants decided to retain MHE to develop this alternative

site in January 2000. *Id.*, ¶ 16. Plaintiff also alleges that neither Midwest nor Chemfinet have paid SKY its fees, which total $202,191.00. *Id.*, ¶ 17. Chemfinet has also failed to issue stock to SKY, and Midwest has failed to cause Chemfinet to issue such stock. *Id.* Lastly, the alternate web site, which plaintiff alleges was based on technology owned by, and stolen from, SKY, is currently published on the internet. *Id.*, ¶ 18.

On May 16, 2000, plaintiff commenced this action in the Court of Common Pleas for Franklin County, Ohio. On June 26, 2000, defendants removed the action to this Court.

## II. Venue

Defendants moves to dismiss this action for improper venue. Under the general venue statute, 28 U.S.C. § 1391(a)(2), a plaintiff may file a diversity action "in any forum where a substantial part of the events or omissions giving rise to the claim arose; this includes any forum with a substantial connection with the plaintiff's claim." *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998). According to plaintiff, much of the work on the site development occurred in Ohio. *Tomaszewski Affidavit attached to Plaintiff's Memorandum contra Defendants' Motion to Dismiss or Transfer and for More Definite Statement*, ¶ 10. Under these circumstances, and in light of the fact that the current venue statute was intended to broaden the former law governing venue in diversity cases, *First of Michigan Corp.*, 141 F.3d at 263, this Court concludes that venue in this district is proper and that defendants' motion for dismissal for improper venue is without merit.

Defendants also ask, in the alternative, that the Court transfer venue under 28 U.S.C. § 1404(a) to the Western District of Missouri because that district is a more convenient forum. Even in cases where venue is proper, a court may enter-

tain a motion to transfer if there exists a better forum for the resolution of the dispute between the parties. *See Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir.1980) ("the application of § 1404(a) [is limited] to the transfer of actions commenced in a district court where both personal jurisdiction and venue are proper"); *Great Lakes Bancorp v. Holbrock*, No. 95–CV–72666–DT, 1996 WL 426439, at * 5 (E.D.Mich. Feb.29, 1996).

## A. Standard for Transfer to a More Convenient Forum

■ Defendants contend that transfer of venue to the Western District of Missouri is appropriate pursuant to 28 U.S.C. § 1404(a), which provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The threshold consideration under § 1404(a) is whether venue would be proper in the United States District Court for the Western District of Missouri. An action "might have been brought" in a transferee court if:

a. The court has jurisdiction over the subject matter of the action

b. Venue is proper there, and

c. The defendant is amenable to process issuing out of the transferee court.

*Continental Grain Co. v. Barge F.B.L.–585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960); *Neff Athletic Lettering Co. v. Walters*, 524 F.Supp. 268, 271 (S.D.Ohio 1981). There is no dispute that plaintiff could have brought this action in the Western District of Missouri because both defendants reside in that district and because the business relationship between plaintiff and defendants originated there.

■ Once it is determined that the case "could have been brought" in the transferee court, the factors to be considered under § 1404(a) are similar to those weighed by courts in determining *forum non conveniens* motions; however, transfers pursuant to § 1404(a) may be granted "upon a lesser showing of inconvenience." *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955). The plaintiff's choice of forum is to be given considerable weight. *See Hanning v. New England Mutual Life Ins. Co.*, 710 F.Supp. 213, 214 (S.D.Ohio 1989); *Artisan Development, Div. of Kaiser Aetna v. Mountain States Development Corp.*, 402 F.Supp. 1312, 1314 (S.D.Ohio 1975).

■ The moving party has the burden of demonstrating that the case should be transferred to a different forum. Courts are to consider both the private interest of the litigants and the public's interest in the administration of justice. *Gulf Oil v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The litigants' interests include:

> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of the case easy, expeditious, and inexpensive.

*Id.* at 508, 67 S.Ct. 839. Public interests include docket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law. *Id.*

This Court has also considered additional factors when evaluating whether transfer is appropriate under § 1404(a). These additional factors include "the nature of the suit; the place of the events involved; ... and the residences of the parties." *Midwest Motor Supply Co., Inc. v. Kimball*, 761 F.Supp. 1316, 1318 (S.D.Ohio 1991).

## B. Application

Defendants contend that the Western District of Missouri would be a more con-

venient forum. First, defendants note that both Midwest and Chemfinet maintain their principal places of business in Kansas City, Missouri. Second, defendants argue that John Kresovsky, SKY's managing partner, resides in Overland Park, Kansas, a suburb of Kansas City, Missouri, where SKY maintains an office. Third, defendants point out that SKY was not registered as doing business in Ohio until May 17, 2000, one day before this suit was filed. Fourth, defendants contend that a substantial part of the events giving rise to the plaintiff's claims occurred in Missouri because the parties negotiated the terms of the contract in the Kansas City area, because defendants hired another Missouri company to create the web site, and because that site is currently hosted on a server located in Missouri. Fifth, defendants argue that the bulk of the documentary evidence expected to be used in this case is located in Kansas City, Missouri. Finally, defendants argue that several non-party witnesses, whose testimony is material to this litigation, either reside in the Kansas City, Missouri, area or fall within the subpoena power of the Western District of Missouri.

Plaintiff objects to transfer on the ground that its choice of forum is to be given considerable weight. Furthermore, plaintiff argues that the Southern District of Ohio is the more convenient forum for all but one of plaintiff's witnesses: six of the seven employees who will testify for plaintiff and the non-party witnesses reside in Columbus, Ohio. Plaintiff also argues that SKY's documentary evidence, as well as the web site developed by SKY and the source code comprising that site, are located in the Southern District of Ohio. Moreover, plaintiff contends that most of the events underlying this action occurred in this district: plaintiff allegedly designed, developed, and completed the web site in Columbus, Ohio, and representatives of defendants allegedly traveled to Ohio several times to review the prototype and progress of the web site, and to discuss aspects relating to the site's function-

ality, maintenance contracts and software updates. Plaintiff also argues that defendants are better able financially to withstand the cost of litigating in a distant forum than is plaintiff.

### 1. Litigants' Interests

"The plaintiff's choice of forum is to be given considerable weight and the balance of convenience, considering all of the relevant factors, should be strongly in favor of a transfer before such will be granted." *Hanning,* 710 F.Supp. at 214 (citing *Nicol v. Koscinski,* 188 F.2d 537 (6th Cir.1951)). *See also United States v. Cinemark USA, Inc.,* 66 F.Supp.2d 881, 887 (N.D.Ohio 1999); *Picker Int'l v. Travelers Indem. Co.,* 35 F.Supp.2d 570, 573 (N.D.Ohio 1998); *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Guarantee Trust Life Ins. Co.,* 8 F.Supp.2d 1008, 1010 (N.D.Ohio 1998); *United States ex rel. Grand v. Northrop Corp.,* 811 F.Supp. 330, 332 (S.D.Ohio 1992); *Midwest Motor Supply Co. v. Kimball,* 761 F.Supp. at 1318; *Cincinnati Milacron Indus., Inc. v. Aqua Dyne, Inc.,* 592 F.Supp. 1113, 1118 (S.D.Ohio 1984); *Priess v. Fisherfolk,* 535 F.Supp. 1271, 1279 (S.D.Ohio 1982); *Artisan Dev. v. Mountain States Dev. Corp.,* 402 F.Supp. at 1314. However, a plaintiff's choice of forum is entitled to somewhat less weight when the case is removed to federal court because the plaintiff is no longer in his or her chosen forum, which was state court. *Midwest Motor Supply Co.,* 761 F.Supp. at 1320 n. 7; *Neff Athletic Lettering Co.,* 524 F.Supp. at 273. Technically, plaintiff did not choose this Court, since the action was originally filed in the Common Pleas Court for Franklin County, Ohio; therefore, the plaintiff's choice of forum, while relevant to the issue of transfer, is not entitled to the substantial weight that it otherwise might receive.

Because their principal places of business are located in Kansas City, Missouri, both defendants reside in the Western Dis-

trict of Missouri. *See Duncan Affidavit attached to Defendants' Combined Motion to Dismiss or Transfer and for a More Definite Statement,* ¶¶ 3–4. Neither defendant has offices, facilities, agents or employees in Ohio. *Id.,* ¶ 5. Plaintiff is a Kansas limited liability company with its headquarters in Columbus, Ohio. *Michael Tomaszewski Affidavit attached to Plaintiff's Memorandum contra Defendants' Motion to Dismiss or Transfer and for More Definite Statement,* ¶ 1. The Court also notes that SKY has a registered office located in Overland Park, Kansas, a suburb of Kansas City, Missouri. *Exhibit C attached to Defendants' Motion to Dismiss or Transfer and for a More Definite Statement; Exhibit B attached to Defendants' Reply Memorandum in Support of Defendants' Motion to Dismiss or Transfer and for a More Definite Statement.* Although the location of the parties' principal places of business does not weigh in favor of either party, the fact that plaintiff maintains an office within the subpoena power of the Western District of Missouri and does business in that district weighs in favor of transfer.

In regard to witnesses, plaintiff has presented evidence that six of the seven employees whom it intends to call as witnesses reside in Columbus, Ohio. *Michael Tomaszewski Affidavit,* ¶ 2. The one employee who is not a resident of Ohio, John Kresovsky, resides in Overland Park, Kansas, a suburb of Kansas City, Missouri. *Id.* The nine employees of Midwest and Chemfinet whom defendants intend to call as witnesses, as well as William Duncan and Bruce Diel, affiants for defendants, reside in the Kansas City, Missouri, area. *Bruce Diel Affidavit,* ¶ 3. Plaintiff has also identified eight non-party witnesses, four former employees of SKY and four independent contractors who performed work on the web site, all of whom reside in the Columbus, Ohio, area. *Tomaszewski Affidavit,* ¶¶ 18, 19, 22–24, 26, 29. Defendants have identified five non-party witnesses, employees of companies with a connection to either the SKY or MHE web site, all of whom reside in the Kansas City, Missouri, area. *Diel Affidavit,* ¶¶ 14–24. Given that defendants' potential witnesses will be inconvenienced by trial and other proceedings in the Southern District of Ohio and given that plaintiff's potential witnesses would be inconvenienced by trial and other proceedings in the Western District of Missouri, the Court concludes that this factor does not weigh in favor of either side.

Furthermore, although most of SKY's documentation relating to this lawsuit is located in the Southern District of Ohio, *Tomaszewski Affidavit,* ¶ 29, all of Midwest and Chemfinet's documentary evidence regarding the two Chemfinet web sites is located in the Kansas City, Missouri, vicinity. *Duncan Affidavit,* ¶ 39. The Court concludes that this factor, too, does not weigh in favor of either side.

Assuming, without deciding, that the facts alleged in the complaint are true, a substantial part of the events giving rise to plaintiff's claims occurred in Missouri. Duncan and Kresovsky negotiated the terms of the contract in Kansas City, Missouri. *Duncan Affidavit,* ¶¶ 14, 21. When Midwest feared that SKY would not complete the web site in a timely fashion, it allegedly hired MHE, a company located in St. Charles, Missouri, to develop the site for Chemfinet. *Id.,* ¶ 33. This web site, which plaintiff alleges was wrongfully based on the SKY prototype, is hosted on a server located in Missouri. *Id.,* ¶ 38; *Complaint,* ¶¶ 14, 28. Also, defendants' alleged breach of contract, their failure to pay plaintiff for its work on the web site and their failure to issue stock to SKY, occurred in Missouri. The Court concludes that this factor weighs in favor of transfer.

## 2. Public Interests

### a. Applicable Law

In regard to the law governing this action, defendants argue that Missouri law governs plaintiff's claims, while plaintiff

argues that Ohio law controls. A federal court sitting in diversity action must apply the conflict of law rules of the state in which it sits. *See Klaxon v. Stentor,* 313 U.S. 487, 490, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Tele–Save Merchandising Co. v. Consumers Distrib. Co.,* 814 F.2d 1120, 1122 (6th Cir.1987); *International Ins. Co. v. Stonewall Ins. Co.,* 863 F.Supp. 599, 601 (S.D.Ohio 1994). "[T]he Ohio Supreme Court held that Ohio courts confronted with conflicts of law questions should apply the analysis set forth in the *Restatement (Second) of the Law of Conflicts.*" *Macurdy v. Sikov & Love, P.A.,* 894 F.2d 818, 820 (6th Cir.1990). *See also Morgan v. Biro Mfg. Co., Inc.,* 15 Ohio St.3d 339, 342, 474 N.E.2d 286 (1984) [following the *Restatement (Second) of Conflict of Laws* in relation to tort claims]; *Gries Sports Enterprises, Inc. v. Modell,* 15 Ohio St.3d 284, 473 N.E.2d 807 (1984) [following the *Restatement (Second)* in relation to contract claims].

### 1. Contract Claims

Plaintiff asserts claims for breach of contract and promissory estoppel. With regard to contract claims, "Ohio law states that when the parties have not contracted to apply a particular state's laws, the choice of law determination should be made based on the law of the state with the most significant relationship to the contract." *Stonewall Ins. Co.,* 863 F.Supp. at 601 (citing *National Union Fire Ins. Co. v. Watts,* 963 F.2d 148, 150 (6th Cir.1992)). "Ohio courts have adopted the test set forth in Restatement (Second) of Conflicts § 188, to determine which state has had the more significant relationship." *Id.* Section 188 of the *Restatement*

provides that the following factors are to be taken into account when determining the law applicable to a contract claim:

(a) the place of contracting,

(b) the place of negotiations of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties ....

*Restatement (Second) of Conflict of Laws* § 188. These factors are to be considered in applying the principles as set forth by *Restatement (Second) of Conflict of Laws* § 6.[3]

In the case at bar, plaintiff presents evidence that SKY's proposal regarding the web site was developed in Ohio; however, plaintiff fails to offer evidence concerning the state in which negotiations between the parties occurred regarding any of the alleged contracts, whether oral or written. *Tomaszewski Affidavit,* ¶ 4. Given the facts that "[a]ll discussions between Kresovsky and [Duncan] relating to [the] terms of the relationship between Sky and [Midwest] occurred in the Kansas City, Missouri, area[,]" that SKY's proposal was submitted to Midwest in Kansas City, and that Midwest's purchase order and statement of work was sent to SKY's Overland Park address, *Duncan Affidavit,* ¶¶ 10, 14, 21, the Court finds that negotiations between the parties occurred primarily in and around Missouri. Furthermore, the evidence that Kresovsky and Duncan discussed the relationship between SKY

---

**3.** *Restatement (Second) of Conflict of Laws* § 6 provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems;

(b) the relevant policies of the forum;

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;

(d) the protection of justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability, and uniformity of result; and

(g) ease in the determination and application of the law to be applied.

and Midwest in Missouri also indicates that the place of contracting was Missouri.

Performance of the contract, on the other hand, occurred in Ohio. *See Tomaszewski Affidavit,* ¶ 10. However, "the place of performance can bear little weight in the choice of the applicable law when[,] . . . at the time of contracting [,] it is either uncertain or unknown . . . ." *Restatement (Second) of Conflict of Laws,* comment e to § 188. Defendants present evidence, which is uncontroverted, that Kresovsky led defendants' agents to believe that SKY was a company headquartered in Kansas City, Missouri, and that, at the time Midwest issued the purchase order to SKY, it "did not contemplate that any of its employees would have to travel to Ohio or that [Midwest] would be transacting any business in Ohio as a result of the business relationship with Sky." *Duncan Affidavit,* ¶¶ 8–12, 23. Although plaintiff presents evidence that "Defendants were fully aware that the design and development of this site were occurring in Columbus, Ohio given that their representatives traveled to Columbus beginning at the completion of the prototype site in November 1999, and on subsequent occasions[,]" this evidence does not establish that defendants knew—at the time of contracting—that performance would take place in Ohio. Under these circumstances, the Court finds that, at the time of contracting, the place of performance was unknown to defendants; therefore, the fact that plaintiff performed the contract in Ohio is of little relevance to this analysis. Furthermore, given the intangible nature of the web site, the situs of the subject matter of the contract is not relevant to this case. Finally, given that defendants' principal places of business are located in Missouri and that plaintiff's is located in Ohio, the Court concludes that this factor does not weigh in favor of either side. On balance, then, the Court concludes that Missouri law applies to plaintiff's contract claims.

## 2. Tort Claims

Plaintiff also asserts claims for conversion and fraud. Section 147 of the *Restatement (Second) of Conflict of Laws,* which covers conversion actions, provides:

> In an action for an injury to land or other tangible thing, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence, the thing and the parties, in which event the local law of the other state will be applied.

The Supreme Court of Ohio has held that Ohio courts presiding over tort claims must consider the general principles set forth in *Restatement (Second) of Conflict of Laws* § 145 to determine the state with the most significant relationship to the lawsuit. *Morgan,* 15 Ohio St.3d at 342, 474 N.E.2d 286. Section 145 provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> > (a) the place where the injury occurred,
> >
> > (b) the place where the conduct causing the injury occurred,
> >
> > (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and
> >
> > (d) the place where the relationship, if any, between the parties is located.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Restatement (Second) of Conflict of Laws,* § 145.

■ Analysis of plaintiff's conversion claim thus begins with the presumption that the law of the place of the injury controls. Ohio has not adopted a test for determining the place of injury. Although the United States Court of Appeals for the Sixth Circuit "has never adopted a test of where the rightful owner [in a conversion action] 'feels' the loss[,]" that Court did conclude that "it is clear that [an] injury occur[s] ... where the act of conversion, if indeed there was a conversion, was completed." *Charash v. Oberlin College*, 14 F.3d 291, 297 (6th Cir.1994). Other courts applying the *Restatement (Second) of Conflict of Laws* have held that the "Restatement (Second) § 147 governs the choice of law with respect to the tort of conversion and employs the law of the state where the injury (conversion) occurred, unless another state has a more significant relationship to the occurrence, the thing, and the parties." *Myers v. Columbus Sales Pavilion, Inc.*, 575 F.Supp. 805, 809 (D.Neb.1983). *See also In re ContiCommodity Serv., Inc., Securities Lit.*, 733 F.Supp. 1555, 1569–70 (N.D.Ill.1990); *Western Smelting & Metals, Inc. v. Slater Steel, Inc.*, 621 F.Supp. 578, 582 (N.D.Ind.1985).

■ Plaintiff contends that defendants hired MHE to develop and program the Chemfinet web site based on the prototype that SKY had developed and that this misconduct constitutes conversion. Given that defendants and MHE reside in Missouri, and that the MHE-developed web site is located on a server in Missouri, MHE's alleged misappropriation of the prototype developed by SKY, which plaintiff alleges constitutes conversion, occurred in Missouri. Therefore, the place of injury in regard to plaintiff's conversion claims is Missouri.

After the place of injury has been determined, the Court must consider whether another state, *i.e.,* Ohio, has a more significant relationship to this litigation. The determination that Missouri constitutes the place of injury satisfies the first two factors of a § 145 analysis. Given that

Midwest and Kresovsky discussed the possibility of SKY's developing a web site for Chemfinet in Missouri, that the parties negotiated in Missouri, and that all meetings but three occurred in Missouri, *See Duncan Affidavit*, ¶¶ 7, 10,14, 19–21, the Court concludes that the place where the relationship between the parties is centered is also Missouri. In regard to the "domicile" factor, a "corporation's principal place of business is a more important contact than the place of incorporation." *Restatement (Second) of Conflict of Laws,* comment e to § 145. Although the location of the parties' principal places of business does not weigh in favor of either side in this action, the fact that the defendants maintain their principal places of business in Missouri, coupled with the above analysis leads the Court to conclude that Missouri law will govern plaintiff's conversion claim.

The Court now turns to plaintiff's fraud claim. Because the "fraud claim derives from tort law," *See Macurdy,* 894 F.2d at 820, the Court will apply the choice of law rules that Ohio courts apply to tort actions. *Id.* at 821. Section 148, which governs choice of law for claims of tortious fraud and/or misrepresentation, provides in pertinent part:

(2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicile, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Restatement (Second) of Conflict of Laws* § 148(2).

However, other courts that apply the *Restatement (Second) of Conflict of Laws* in regard to torts have analyzed fraud actions under § 145, which applies to all torts, rather than under § 148, and have concluded that "a cause of action for fraud arises where the loss is suffered. That loss 'is deemed to be suffered where its economic impact is felt, normally the plaintiff's residence.'" *Lang v. Paine, Webber, Jackson & Curtis, Inc.*, 582 F.Supp. 1421, 1425 (S.D.N.Y.1984) (quoting *Sack v. Low*, 478 F.2d 360, 366 (2d Cir.1973)) [citations omitted]. *See also Terranova v. Terranova*, 883 F.Supp. 1273, 1278–79 (W.D.Wis. 1995); *Bankers Trust Co. v. Lee Keeling & Assoc.*, 20 F.3d 1092, 1098 (10th Cir.1994); *Bilick v. Eagle Elec. Mfg. Co., Inc.*, 807 F.Supp. 243, 251 (E.D.N.Y.1992); *Management Science America, Inc. v. NCR Corp.*, 765 F.Supp. 738, 740 (N.D.Ga.1991); *Rosenberg v. Pillsbury Co.*, 718 F.Supp. 1146, 1150 (S.D.N.Y.1989); *Bache Halsey Stuart Inc. v. Namm*, 446 F.Supp. 692, 696 (S.D.N.Y.1978); *Arneil v. Ramsey*, 550 F.2d 774, 779 (2d Cir.1977).[4]

■ Because "[a]ll the design, development and programming work related to the web site at issue in this case was performed by SKY in Columbus, Ohio," *Tomaszewski Affidavit*, ¶ 10, plaintiff acted in reliance upon defendants' alleged fraudulent statements in Ohio. Although plaintiff fails to indicate the state in which defendants made the allegedly fraudulent statements, given defendants' Missouri residence and the fact that they did not retain MHE until after representatives of Midwest and Chemfinet made the trip to Ohio in mid-January 2000, *Duncan Affidavit*, ¶¶ 30, 33, the Court assumes that defendants made the alleged fraudulent statements in Missouri. "The domicile, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant." *Restatement (Second) of Conflict of Laws*, comment i to § 148. Furthermore, when the plaintiff is a corporation, "the principal place of business is a more important contact than the place of incorporation." *Id.* This is especially true when the plaintiff's loss is pecuniary in nature because "a financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship." *Id.* Although defendants maintain their principal places of business in Missouri, and SKY is organized under the laws of Kansas, plaintiff's most important contact is with Ohio, where SKY claims that it has its principal place of business. *See Tomaszewski Affidavit*, ¶ 1. In regard to the "rendering performance" factor, the *Restatement* provides:

Another contact is the place where the plaintiff is to render performance under the contract which he has been induced to enter by the false representations of the defendant provided that this place can be identified and that at least the great bulk of plaintiff's performance is to take place in a single state.

*Restatement (Second) of Conflict of Laws*, comment i to § 148. The Court cannot determine from the record where plaintiff was required to render performance. Furthermore, the record presents no evi-

---

4. However, some courts have concluded that the state where the fraudulent conduct took place is the state where a fraud claim arises. *See Houston North Hosp. Prop. v. Telco Leas-* *ing*, 688 F.2d 408, 409 (5th Cir.1982); *Keene Corp. v. Insurance Co. of North America*, 597 F.Supp. 934, 940 (D.D.C.1984).

dence concerning whether SKY received the allegedly fraudulent misrepresentations in Missouri or Ohio. Finally, the factor regarding the location of tangible items that are the subject of the transaction between the parties is not relevant here. Based on this analysis, the Court concludes that Ohio law applies to plaintiff's fraud claim.

### b. Docket

Although defendants contend that the docket of the Western District of Missouri is less congested than is that of this Court, defendants fail to provide evidence in this regard. Therefore, the Court does not find that this factor weighs in favor of either side.

To summarize, the Court finds that Missouri law is applicable to all but one of plaintiff's claims, that most of the events giving rise to plaintiff's claims occurred in Missouri, and that plaintiff maintains an office in Overland Park, Kansas, a suburb of Kansas City, Missouri, and does business in Missouri. These facts weigh heavily in favor of transferring this case to the Western District of Missouri. Defendants' motion to transfer is therefore meritorious.

### III. Motion for a More Definite Statement

Defendants ask that the Court require plaintiff to file a more definite statement in regard to plaintiff's claims of fraud and breach of contract and the issue of personal jurisdiction.

■■■ Federal Rule of Civil Procedure 8(a), which governs the sufficiency of pleadings, requires a short and plain statement of plaintiff's claims. *See* Fed. R.Civ.P. 8(a); *Loew's Inc. v. Makinson*, 10 F.R.D. 36, 37 (N.D.Ohio 1950). Thus, a "[m]otion for more definite statement is granted only when the pleading is so vague that it is unreasonable to expect that a responsive pleading may or can be framed." *Makinson,* 10 F.R.D. at 37.

■■■ The Court first addresses the issue of whether plaintiff should be required to file a more definite statement in regard to personal jurisdiction. Although defendants are correct in their assertion that plaintiff bears the burden of establishing that defendants are amenable to this Court's jurisdiction, that burden arises, not upon the filing of a complaint, but when *in personam* jurisdiction is challenged. *LSI Indus. Inc. v. Hubbell Lighting, Inc.,* 64 F.Supp.2d 705, 706 (S.D.Ohio 1999). Therefore, defendants' motion for a more definite statement is denied in regard to the issue of personal jurisdiction.

■■■ Defendants also seek a more definite statement in regard to plaintiff's breach of contract claim, requesting that plaintiff be required to specify "(1) the defendant or defendants that allegedly made the contract, (2) the agents for Sky and defendant(s) who allegedly entered into the oral contract, (3) the time and place of the oral contract, and (4) the terms of the oral contract." *Defendants' Combined Motion to Dismiss or Transfer and for a More Definite Statement,* at 21. Defendants rely on *Reed v. General Implement Export Corp.,* 9 F.R.D. 182, 183 (N.D.Ohio 1949), for the proposition that, because "an oral contract, by its very nature, requires specific identification in pleading as to time, place and parties or agents," plaintiff should be required to file a more definite statement. However, Fed. R.Civ.P. 8, which requires only notice pleading, governs the sufficiency of plaintiff's pleading of its breach of contract claim. Given that plaintiff details the proposal that it presented to Midwest, and alleges that "MRI agreed to the cash component of SKY's proposal, [but] it offered only a 10% equity interest in ChemSource, to which SKY agreed[,]" *Complaint,* ¶ 10, plaintiff has set forth the material terms of the alleged agreement between it and Midwest. Thus, the Court concludes that plaintiff has plead sufficient facts to enable defendants to respond to the breach of contract claim. Defendants' motion for a

more definite statement in regard to plaintiff's breach of contract claim is without merit.

■ Defendants seek a more definite statement of plaintiff's fraud claim on the ground that plaintiff fails to state fraud with particularity as required by Fed. R.Civ.P. 9(b). Because "Rule 9(b) prohibits a party from making a general, unsubstantiated charge of fraud lacking in particularity[,]" "the plaintiff is required to set forth the circumstances constituting such fraud." *Van–American Ins. Co. v. Schiappa*, 191 F.R.D. 537, 543 (S.D.Ohio 2000). As a general rule, plaintiffs must allege the time, place and content of the alleged fraud, and must identify the parties who allegedly participated in the fraud. *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 679 (6th Cir.1988). "[G]eneralized accusations of wrongdoing attributed to 'defendants' without any specificity as to which employees of the defendants were engaged in the alleged fraudulent scheme," are not sufficient to identify the parties who allegedly participated in the fraud. *United States v. Mercy Health Sys. of Southwest Ohio*, 188 F.3d 510 (table decision), No. 98–3127, 1999 WL 618018, at *2 (6th Cir. Aug.5, 1999) [affirming district court's dismissal of the plaintiff's amended complaint on this basis].

■ In the case at bar, plaintiff alleges:

Through its statements and actions, MRI and ChemSource continued to lead SKY to believe that MRI and ChemSource would use the SKY-developed site and honor the terms of their contract even after MRI and ChemSource retained another firm to develop an alternate site.

Throughout this period, MRI and ChemSource had no intention of issuing stock to SKY, paying SKY's bill or using the completed site created by SKY. Sky acted in reliance on MRI's and ChemSource's continued misrepresentations.

MRI and ChemSource's actions and representations throughout this period constitutes fraud.

*Complaint,* ¶¶ 24–26. The complaint wholly fails to articulate the contents of defendants' allegedly fraudulent statements. Similarly, plaintiff fails to identify those employees or representatives of the defendants who made the allegedly fraudulent statements, nor does it allege when or where these statements may have been made. The Court concludes that the complaint fails to state fraud with particularity as required by Rule 9(b); therefore, defendants' motion for a more definite statement, as it relates to plaintiff's claim of fraud, is meritorious.

WHEREUPON, plaintiff must file, within twenty (20) days of the date of this order, an amended complaint that states with particularity its claims of fraud. In all other respects, defendants' motion for more definite statement is **DENIED.**

Defendants' motion to transfer the action to the Western District of Missouri is **GRANTED.** This action is hereby **ORDERED TRANSFERRED** to the United States District Court for the Western District of Missouri.