**INTERNATIONAL INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**STONEWALL INSURANCE COMPANY and Crown Equipment Corporation, Defendants–Appellees.**

No. 94–4134.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 25, 1996.

Decided June 18, 1996.

Edward R. Goldman (briefed), Rendigs, Fry, Kiely & Dennis, Cincinnati, OH, Kelly A. Giampa (argued), Matthew J. Fink, Jeffrey A Goldwater (briefed), Bollinger, Ruberry & Garvey, Chicago, IL, for plaintiff-appellant.

Glenn V. Whitaker, Vorys, Sater, Seymour & Pease, Cincinnati, OH, Michael D. Gallagher (argued and briefed), Vincent J. Di Stefano, German, Gallagher & Murtagh, Philadelphia, PA, for Stonewall Ins. Co.

Renee S. Filiatraut, Thompson, Hine & Flory, Cincinnati, OH, John Elton Tate, New Breman, OH, for Crown Equipment Corp.

Before: MARTIN, GUY, and RYAN, Circuit Judges.

MARTIN, J., delivered the opinion of the court, in which GUY, J., joined. RYAN, J., (pp. 608–09), delivered a separate concurring opinion.

BOYCE F. MARTIN, Jr., Circuit Judge.

In this appeal, we are once again asked to delve into the murky world that is conflict of laws, and must decide another somewhat complex choice of law issue. International Insurance Company appeals the district court's determination that Louisiana law applies to insurance policies issued by International and defendant Stonewall Insurance Company to Crown Equipment Corporation. Applying Ohio's choice of law principles, the district court held that Louisiana had the most significant relationship to the contracts at issue and concluded that Louisiana law governs this dispute. International now appeals, arguing that Ohio law, rather than Louisiana law, controls. For the reasons set forth below, we AFFIRM the judgment of the district court.

Crown is an Ohio-based corporation engaged in the business of manufacturing forklifts. Crown's forklifts are sold throughout the United States. Crown was sued in Louisiana state court for damages caused by a defective forklift. The accident occurred in Louisiana. A jury in the Louisiana state tort action awarded the plaintiff $4,282,808.26 and, pursuant to a Louisiana statute, the state court awarded pre-judgment interest on the award, which amounted to approximately $2,900,000.00. In sum, Crown is liable for a total of at least $7,100,000.00 for damages and interest arising out of the forklift accident.

At the time of the accident, Crown was self-insured for the first $100,000.00 per occurrence of exposure. Crown also had excess umbrella insurance policies with International, an Illinois corporation, and Stonewall, a corporation headquartered in Alabama. International's umbrella policy was limited to $5,000,000.00 per occurrence and in the aggregate, and attaches after the applicable limits of Crown's self-insured primary policy have been exhausted. Stonewall's policy attaches after the underlying insurers, Crown and International, have paid or been held to pay the full amount of their ultimate net loss liability. Stonewall's policy, like International's, is limited to $5,000,000.00 per occurrence and in the aggregate.

In order to determine the extent of its obligations under its insurance policy, International filed this declaratory judgment action in federal court, seeking to have a determination of each party's obligation on the judgment in the underlying tort action. The controversy is succinctly set forth in the complaint filed with the district court:

> CROWN was named as a defendant in an action entitled *Hopper v. Crown Equipment Co.* filed in the State of Louisiana. (Hereinafter the "Underlying Litigation"). A judgment was entered in the Underlying Litigation against CROWN in the amount of $4,282,808.26, along with pre-judgment and post-judgment interest. Pre-judgment interest in Louisiana is assessed, as a matter of right, pursuant to La.R.S. 13:4203 from the date of demand to the date of judgment. The award of pre-judgment interest in the Underlying Litigation amounts to approximately $2.9 million. CROWN has appealed the judgment and the appeal is currently pending.
>
> CROWN gave notice of the *Hopper* claim to INTERNATIONAL and STONEWALL. INTERNATIONAL contends that its obligations are limited to its $5 million policy limits, inclusive of any payment for pre-judgment or post-judgment interest; and that STONEWALL is obligated to assume payment of the portion of the pre-judgment and post-judgment interest in excess of INTERNATIONAL's policy limits, up to STONEWALL's $5 million policy limit. STONEWALL contends that INTERNATIONAL must pay the full judgment in excess of INTERNATIONAL's limits, and that it owes no obligation to indemnify CROWN with respect to the Underlying Litigation, contrary to INTERNATIONAL's contentions.

Stonewall's answer to the complaint asserted that Louisiana law applied to this action and that, under Louisiana law, parties responsible for payment of the judgment are also responsible for payment of pre-judgment

interest. Because Crown and International were obligated to pay the judgment—Stonewall's excess umbrella coverage does not attach on a 4.2 million dollar claim—they were also responsible for payment of all of the pre-judgment interest.

International subsequently filed a motion for judgment on the pleadings, arguing that Ohio law applied to the controversy and that, under Ohio law, it was liable only for pre-judgment interest within its policy limits. According to International, Stonewall was responsible for pre-judgment interest which exceeded the five million dollar limit of liability under International's policy. Stonewall entered a cross-motion for judgment on the pleadings, arguing again that Louisiana law applied.

The district court denied International's motion for judgment on the pleadings and granted Stonewall's cross-motion. Applying Ohio's choice of law rules, the court ruled that, under **Restatement (2d) Conflicts of Law** §§ 6, and 188, Louisiana was the state with the most significant relationship to International's insurance contract with Crown. Therefore, Louisiana law applied. Because the district court's determination that Louisiana law applied rendered International liable for its pro rata share of the pre-judgment interest on the 4.2 million dollar damage award, International now appeals.

 The dispositive issue in this case is a choice of law question, the result of which determines each party's performance obligations to pay the damage and pre-judgment interest awarded in the underlying *Hopper* tort suit. The parties agree that, under Ohio law, an insurer is not liable for interest in excess of its policy limits. *Phoenix Phase I Assoc. v. Ginsberg, Guren & Merritt*, 23 Ohio App.3d 1, 490 N.E.2d 634, 638 (1985). If Ohio law applies, Crown must pay the initial $100,000.00, International must pay for damages and interest up to its policy limit of five million dollars, and Stonewall will be obligated to pay unpaid balance of the roughly 7.1

million dollar total award. The parties also agree that, under Louisiana law, insurers are liable for pre-judgment interest in excess of any policy limit. La.Rev.Stat. Ann. § 13:4203 (West 1989); *Remedies v. Lopez*, 560 So.2d 118, 119 (La.Ct.App.1990); *Robichaux v. Randolph*, 555 So.2d 581, 587 (La. Ct.App.1989). If Louisiana law applies, International is obligated to pay both the 4.2 million dollar damage award—minus Crown's initial $100,000.00 payment and prejudgment interest on that payment—and literally all of the roughly 2.9 million dollars in pre-judgment interest on that award. Because the damage award is within International's policy limits, Stonewall is obligated to pay almost nothing under Louisiana law.[1]

 A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state. *Klaxon v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Security Ins. Co. v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1005 (6th Cir.1995). Here, the district court correctly applied Ohio's choice of law rules to determine which state's law governs this dispute. Ohio's choice of law rules require a court to apply the law of the state with the most significant relationship to the contract when the parties have not specified which state's substantive law should govern the contract. *National Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 150 (6th Cir.1992). We review the district court's application of state law *de novo*. *Id.* To determine which state has the most significant relationship, Ohio has adopted the test set forth in the **Restatement (Second) of Conflict of Laws** § 188 (1971). Section 188 provides in relevant part:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

1. The parties have informed the Court that, because International has paid some amounts on other claims against Crown since this action, payment of the instant claim will exceed its five million dollar aggregate limit and Stonewall will

be responsible for some small portion of the 4.2 million dollar damage award and, under Louisiana law, a pro rata share of the pre-judgment interest on that award.

(2) In the absence of an effective choice of law by the parties ... the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Underlying the factors set forth in section 188 are the principles enunciated in section 6 of the **Restatement**, which provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

**Restatement** at § 6.

■ The district court properly utilized sections 6 and 188 of the **Restatement** to determine which state's law should apply to the contract at issue. However, before turning to our discussion of the factors set forth in sections 6 and 188, we address one of International's subsidiary arguments. International claims that Ohio has adopted section 193 of the **Restatement**, which governs insurance contracts, and that section 193 requires application of Ohio substantive law.

However, we need not decide whether Ohio has adopted section 193. Even if Ohio has adopted section 193, that section does not apply to this insurance policy. Section 193 provides:

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

**Restatement** at § 193. International claims that its insurance policy was an indemnity policy, and that, as an indemnity policy the risk that it insured against was the depletion of Crown's assets, which are principally located in Ohio. Under section 193, according to International, Ohio law should govern the insurance policy because the principal location of the insured risk is Ohio.

However, we do not agree that International's policy was strictly an indemnity policy. The contract states that International will "pay on behalf of the insured, the ultimate net loss ..., which the insured may sustain by reason of the liability imposed upon the insured by law...." This "pay on behalf of" language indicates that International expected to pay for any liability imposed upon Crown directly to the injured party. The plain language of this clause refutes the notion that International simply intended to reimburse Crown for any loss Crown suffered through adverse tort judgments. Buttressing our view is the fact that the policy provides for the possibility that a "pay on behalf of" contract may be invalid in certain states. Another clause in the contract states that "[i]n a jurisdiction where, by reason of law or statute, this policy in invalid as a 'pay on behalf of' contract, the company agrees to indemnify the insured for ultimate net loss in excess of their retained limits." These clauses, when read together, undermine the possibility that the parties intended that International would simply indemnify

Crown for any losses it may suffer by way of adverse tort judgments.

Under our view, because this is not strictly an indemnity contract, we do not believe the parties intended the risk against which Crown was insured to be the possible depletion of its assets.[2] Instead, the risk against which International provided insurance was the possibility of adverse tort judgments against Crown, a risk that necessarily depends upon the law of the state that governs the tort claim. Because no principal location of the risk exists, section 193 does not apply. **Restatement** at § 193 cmt. a (stating that where the insured risk moves from state to state the law governing the contract must be determined by application of section 188).

Turning to an application of the factors set forth in section 6 of the **Restatement**, we note that, even when sections 6 and 188 are read together, it is clear they only provide a broad general framework for the resolution of choice of law issues in the context of a contract dispute. Within that framework, a judge must balance principles, policies, factors, weights, and emphases to reach a result, the derivation of which, in all honesty, does not proceed with mathematical precision. The district judge, in his written opinion, parsed each of these sections item-by-item. Some of the subsections were found inapplicable under the facts presented here. As to those found to be relevant, the court made a decision as to whether application of the particular principle favored the application of Ohio or Louisiana law. Because the district court's opinion is published, we need not repeat here the trial judge's individual conclusions as to each subsection. *See International Ins. Co. v. Stonewall Ins. Co.*, 863 F.Supp. 599 (S.D.Ohio 1994). Suffice it to say, he found that some factors favored the application of Ohio law but that, taken as a whole, the balance was in favor of applying Louisiana law. Similarly, the parties in their briefs have gone through the relevant portions of the **Restatement** item by item, and each has offered plausible argu-

ments as to how each section should be applied under these facts. Although our own conclusions on some of the individual **Restatement** guidelines differ from that of the district court, we nonetheless conclude that Louisiana law should be applied.

The key to our analysis is that the choice of law principles found in the **Restatement** need not be given equal weight in every circumstance, nor are they intended to be exclusive. They also are relatively elastic, and in some cases equivocal. As is stated in the Comment on subsection (2) to section 6 of the **Restatement**:

> It is not suggested that this list of factors is exclusive. Undoubtedly, a court will on occasion give consideration to other factors in deciding a question of choice of law. Also it is not suggested that the factors mentioned are listed in the order of their relative importance. Varying weight will be given to a particular factor, or to a group of factors, in different areas of choice of law....
>
> At least some of the factors mentioned in this Subsection will point in different directions in all but the simplest case. Hence any rule of choice of law, like any other common law rule, represents an accommodation of conflicting values.

With these instructive comments in mind, we have concluded that the most significant factor to be considered under the facts presented here, is found in section 6(2)(d), the protection of justified expectations. Crown is a large national company whose products are sold and used throughout the United States. The products sold are capable of, and do on occasion, cause injury to persons or property. It is beyond peradventure that Crown wanted complete liability protection within the policy limits of the insurance it purchased.

The tort law landscape has been in a considerable state of flux throughout the United States for the last several years. Legislative bodies, including Congress, have decided to reshape legal doctrine in what traditionally

---

**2.** We do not decide whether, in the case of a pure indemnity insurance policy, the principal location of the risk would always be the state in which the insured parties assets are located, and that therefore section 193 would always apply.

had been primarily a common-law domain. Some of the legislative changes have had a considerable impact on the nature and amount of recovery obtainable and from whom it can be obtained.[3]

We are confident that the reasonable expectations of an insured, such as Crown, would be that, whatever a state allowed by way of recovery to a tort plaintiff, it would be covered by its insurance. Nor do we see this as a one-sided equation. The expectations of an insurer such as International are also best served overall by applying the law of the state where the injury occurred. Under facts such as are presented here, an insurance carrier cannot reasonably expect that an insured would want some type of fluctuating coverage which would afford full protection in one locale, but not in another. Although in any given situation, as is the case here, the insurer might profit from applying the law of a different state, it does not fall within the purview of a "reasonable expectation" to profit at the expense of the insured. If the situation were reversed here, and Crown was situated in Louisiana but the injury had taken place in Ohio, we doubt that International would be arguing in favor of application of the law of Louisiana, and instead would be urging us to apply the law of the state where the injury occurred, namely Ohio. Finally, International is always able to protect itself by including a choice of law provision in its insurance policies if it chooses to do so.

Strengthening our conclusion that the parties' expectations are best preserved through application of Louisiana law is our preceding discussion of the language of the contract itself. The parties anticipated that the law of various jurisdictions would affect International's performance under the contract by providing for the possibility that the law of a particular state would render the contract invalid as a "pay on behalf of" contract. In the event the contract were invalidated on that ground, International's performance obligations would change from paying directly to an injured party to indemnifying Crown for its ultimate net loss. Standing alone, this fact might not persuade us that Louisiana law properly governed this controversy. Nonetheless, it is one more weight to be placed upon the scale in favor of the application of Louisiana law.

We pause here to note that the district court also concluded that section 6(2)(d) favors application of Louisiana law. However, when considering section 6(2)(d), the district court addressed the justified expectations of Louisiana tort victims and the state of Louisiana. Incorporating these factors into the analysis under section 6(2)(d) unduly broadens the scope of the inquiry under that section and in effect double counts these factors, falling as they do within the parameters of section 6(2)(c). Section 6(2)(c) directs us to consider "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue." The interests of Louisiana tort victims, subsumed within the state of Louisiana's natural interests in protecting those tort victims, more appropriately fall with section 6(2)(c).

In reaching our conclusion, we must necessarily reject the result urged by International, and it is incumbent upon us to also distinguish the case upon which it places its principal reliance, *Revco D.S., Inc. v. Government Employees Ins. Co.*, 791 F.Supp. 1254 (N.D.Ohio 1991), *aff'd*, 984 F.2d 154 (6th Cir.1992).

In discussing *Revco*, we first note that, although the case was before our court, the only substantive opinion written in the case is that authored by the district judge. On appeal, the district court judgment was "affirmed upon the reasoning set out by the court in its opinion filed August 19, 1991...." Although affirming in this manner certainly serves judicial economy, it is sometimes difficult to determine the scope of the appellate holding. The very brief substantive discussion of the appellate opinion makes no reference to a choice of law issue, and, of course, we are not bound by district court opinions no matter how well reasoned.

---

**3.** Caps on compensatory and punitive damages and changes in joint and several liability concepts are but two of the many statutory changes that have occurred in the past few years.

For the purposes of discussion, we will assume that our court intended to adopt the choice of law analysis set forth in the district court opinion. We have some reservations in making this assumption, however, because the district court's choice of law holding is arguably contrary to the result reached in *National Union Fire Ins. Co. v. Watts*, 963 F.2d at 150, a case relied upon by Stonewall with the same fervor that International demonstrates with regard to *Revco*. Although *Watts* was decided after the district court entered judgment in *Revco*, it was decided prior to our appellate decision in *Revco*. If the holdings in *Watts* and *Revco* truly are inconsistent, it makes the decision in *Revco* problematic, since the *Revco* panel would have been bound to follow prior relevant precedent.

Although the parties to this controversy spill considerable ink trying to distinguish *Watts* from *Revco*, and both cases from the case at bar, we find it unnecessary to enter that thicket, at least beyond the edge. Both *Watts* and *Revco* are similar in that the insureds did business throughout the United States. Both cases also involve liability coverage in connection with a personal injury. In *Watts*, the fact that the insured did business nationwide resulted in the conclusion that "the insurer intended its coverage to be governed by the state in which the claimant was using his vehicle." *Watts*, 963 F.2d at 152. In *Revco*, the district judge concluded that the state law where the underlying injury occurred had a less significant interest in the controversy than did "the place of incorporation and place of business of [the insured]." *Revco*, 791 F.Supp. at 1263.

Although these results on the surface may appear contradictory, as is often the case in choice of law controversies, the result is heavily fact driven. For what it is worth, we believe that the correct result was reached in both *Revco* and *Watts*. We also believe, however, that the facts in *Watts* are somewhat more analogous to the facts presented here.

Without attempting any detailed discussion of either case, we deem it significant that in *Revco* two insurance companies involved in insuring the underlying risk had become insolvent, and the state of Ohio, through the Ohio Insurance Guaranty Association, had already paid out $9,133,510.46 on behalf of just one of the insolvent carriers and had several million dollars in claims pending as to the other. Under these facts, it is understandable how the district court concluded that Ohio had a more significant interest in the dispute as to insurance coverage than did the state of Texas, which was the site of some, but not all, of the personal injuries involved.

Resolving a choice of law issue is not an exact science, but an art form. As our opinion makes clear, these cases are frequently fact driven and each case has to be analyzed within its own factual context. Here, we reach the same conclusion as did the district court, although we use fewer colors on our canvas. AFFIRMED.

RYAN, Circuit Judge, concurring.

I concur in the view that the judgment entered by the district court should be affirmed because, according to Ohio's choice of law rules, Louisiana has the most significant relationship to the insurance contracts entered into between Crown Equipment Corporation and International Insurance Company. I reach that conclusion, however, by a somewhat different analytical route than is taken by my colleagues.

Sections 6 and 188 of the RESTATEMENT (SECOND) CONFLICT OF LAWS, which have been adopted by the Ohio Supreme Court, *Nationwide Mutual Insurance Co. v. Ferrin*, 21 Ohio St.3d 43, 487 N.E.2d 568 (1986), provide a broad framework for resolving choice of law issues in the context of a contract dispute. As District Judge S. Arthur Spiegel, in his excellent opinion, carefully explained, there are factors in sections 6 and 188 of the RESTATEMENT that point toward Ohio as having the most significant relationship to these insurance contracts, others that point toward Louisiana, and still others that point in neither direction. For me, the determinative indicator that Louisiana has the most significant relationship with these insurance agreements is that the state court's award of $2.9 million in interest to Hopper, the tort victim, was made pursuant to La.Rev.Stat. Ann.

§ 13:4203. This statute "creates a rule of public policy requiring liability insurers to assume responsibility for legal interest on the applicable policy limits from date of judicial demand until paid." *Remedies v. Lopez*, 560 So.2d 118, 119 (La.Ct.App.1990). Presumably, the public policy involved here is to encourage prompt settlement of meritorious tort actions. Viewed in this manner, it becomes clear that Louisiana has a significant interest in having its rule applied. Stated differently, the interest award is one which was made pursuant to a Louisiana law that simultaneously prescribes the allocation of the burden of that interest. Thus, unlike most state laws concerning interest on judgments, Louisiana law addresses explicitly and significantly the liability of the insurers here. In doing so, of course, the Louisiana law has "the most significant relationship" to the insurance contracts between the two liability carriers and the insured tortfeasor.

For these reasons, I concur in the judgment of affirmance.