Khalil JAMHOUR, etc., Plaintiff,

v.

**SCOTTSDALE INSURANCE COMPANY, et al, Defendants.**

No. C2–01–484.

United States District Court,
S.D. Ohio,
Eastern Division.

May 3, 2002.

Marcell Rose Anthony, Columbus, OH, for plaintiff.

Nicholas Edward Subashi, Law Office of Nicholas E. Subashi, Dayton, OH, Jefffrey Alan Hazlett, Dayton, OH, for Scottsdale Ins. Co., defendant.

John Charles Nemeth, Columbus, OH, for Gallodora Ins. Agencies, Inc., defendant.

## OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court for consideration of Defendants' Joint Motion for Transfer of Venue under 28 U.S.C. § 1404. (Doc. # 25).[1] Plaintiff's Motion to Strike the Affidavit of Joseph Gallodoro. (Doc. # 43). The Court exercises jurisdiction over this matter pursuant to 28 U.S.C.

---

1. This Motion is titled "Defendants' First Joint Motion for Summary Judgment, Dismissal, or Removal." Defendants', however, have agreed to limit this motion to one to transfer venue under U.S.C. § 1404(a). (Doc. # 28). Accordingly, the Court will refer to Defendants' Motion as "Defendants' Motion for Transfer of Venue."

§ 1332. For the reasons set forth below, Plaintiff's Motion to Strike is **DENIED** without prejudice to refile and Defendants' Motion is **GRANTED**.

## I. FACTS

Plaintiff is the sole shareholder of Jamhour, Incorporated ("Jamhour"), doing business as the Rose Café, a Louisiana corporation. (*Id.* ¶ 2; Doc. # 25, Ex. 3). In Jamhour's Articles of Incorporation, signed by Plaintiff on May 25, 1998, Plaintiff is listed as the incorporator and Plaintiff's address is shown to be 7533 West Judge Perez Drive, Arabi, Louisiana, the same as that of the Rose Café. (*Id.; Complaint* ¶ 1).

Defendant Scottsdale Insurance Company ("Scottsdale") is an Arizona corporation and is the issuer of a commercial insurance policy covering the Rose Café. (*Complaint* ¶ 1). Defendant Gallodoro Insurance Agencies, Incorporated, ("Gallodoro"), is a Louisiana corporation, with its sole office located in Louisiana. (*Id.*).

In approximately June of 1999, Plaintiff solicited Gallodoro, by telephone, to procure a commercial insurance policy to cover the Rose Café. (Pl.Aff.¶ 5). Gallodoro faxed a commercial insurance policy application, naming the insurer as Scottsdale, from its office in Louisiana to Plaintiff in Ohio. (*Id.*). Plaintiff claims that he signed the insurance application and faxed it back to Gallodoro. (*Id.* ¶ 6). Plaintiff paid his Jamhour's insurance premiums with a check drawn on an Ohio bank. (*Id.*). There is a dispute as to whether the application was signed in Ohio by Plaintiff, or whether Plaintiff gave oral permission to Gallodoro to have an employee of the Rose Café sign on Plaintiff's behalf. Nevertheless, the application was accepted by Scottsdale and the Rose Café was insured by the commercial policy for a one year period beginning on July 2, 1999. (*Id.*, Ex. A).

On November 21, 1999, a fire occurred at the Rose Café. (Id.¶ 9). Plaintiff filed claims with Scottsdale for loss of business income in excess of $21,000.00, for fire damage and loss of business records and documents which did not exceed $5,000.00, for fire damage and loss to certain bathroom renovations approximating $6,000, and for fire damage to certain other restaurant equipment and to inventory approximating $10,600.00. (*Id.* ¶ 10).

On April 28, 2000, Scottsdale paid $8,316.03 to Plaintiff. (*Plaintiff's Memorandum Contra to Defendants' Motion for Transfer of Venue*, Ex. B). Scottsdale also prepared and sent to Plaintiff an inventory of damaged contents of the Rose Café that it had compiled from its post-fire investigation. Scottsdale claimed that Plaintiff had provided no documentation of any additional damage due to the fire. (*Id.*). Scottsdale, however, offered to send the adjuster to reinspect the Rose Café to check for additional damage. (*Id.*). Further, Scottsdale claims it asked for documentation of expenditures claimed to be made for renovation of two bathrooms in the Rose Café. (*Id.*). And, finally, Scottsdale enclosed a copy of Jamhour's application for insurance on the Rose Café, which it claims clearly showed that no request for business interruption insurance had been made, and consequently, the Rose Café did not have coverage for such losses. (*Id.*).

Plaintiff claims that Scottsdale untimely paid only a portion of the claim for fire damage to certain equipment and inventory, and denied or did not respond to claims for the balance of the fire claim. (*Complaint* ¶ 11).

In April or May of 2000, Plaintiff claims that he discovered that all of the business equipment in the Rose Café had been sto-

len. (*Id.* ¶ 16). Plaintiff thereafter filed a claim for $65,000.00 for the equipment he claimed had been stolen. (*Id.*). Plaintiff contends that the receipts for the stolen equipment were lost in the fire at the Rose Café. (*Id.* ¶ 18). The equipment was allegedly purchased from Sun T.V. and Wasserstrom, both stores in Columbus, Ohio. (Pl.Aff.¶¶ 15, 17). Since Plaintiff had no receipts, he offered his tax return reflecting over $65,000.00 in shareholder contributions to Jamhour as proof that he had purchased the restaurant equipment. (*Id.* ¶ 15). Further, Plaintiff offers the testimony of Matthew Hendrix, an employee of Wasserstrom Company, that Plaintiff did in fact purchase restaurant equipment from Wasserstrom. (*Plaintiff's Memorandum Contra Defendants' Motion for Transfer of Venue*, Ex. D).

On April 11, 2001, Scottsdale denied Plaintiff's claim for loss incurred due to the alleged theft. (*Id.* Ex C). Scottsdale contends that it denied the claim because Plaintiff produced no evidence that there was a theft; Plaintiff produced no documents or witnesses to prove he owned any of the allegedly stolen items; Plaintiff produced no documents or witnesses to corroborate that he purchased the allegedly stolen equipment from Wasserstrom; Plaintiff produced no documents or witnesses the substantiate his claim that he paid over $50,000.00 cash for the allegedly stolen items and drove the items in a Ryder truck from Columbus, Ohio to Louisiana; Plaintiff produced no evidence of the source of the cash by which he made the alleged purchases; Plaintiff produced no evidence of having rented a Ryder Truck or gasoline purchases for the trip to Louisiana; Plaintiff could not identify the rental agency from which the truck was rented or to which it was dropped off; and, Plaintiff could not identify the laborers he claimed unloaded the truck in New Orleans, or produce evidence of payment for the offloading of the truck. (*Id.*).

On April 23, 2001, Plaintiff filed the Complaint in this suit in the Court of Common Pleas, Franklin County, Ohio. Plaintiff claims breach of insurance contract by failure to fully pay the claim arising out of the 1999 fire at the Rose Café; failure to pay the claim arising out of the April–May 2000 theft of $65,000 in equipment; failure to perform a contract because of Plaintiff's Arab race and Muslim religion in violation of 42 U.S.C. § 1981; and, negligent misrepresentation on the part of Gallodoro in its procurement of suitable insurance for the Rose Café.

Defendants removed the case to this Court on May 24, 2001. (Doc. # 1).

## II. VENUE

Defendants move the Court to transfer venue to the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1404(a). Defendants do not argue that Ohio is an improper venue: rather, they claim that this Court is not the most fair and convenient forum for resolution of this action. "Even in cases where venue is proper, a court may entertain a motion to transfer if there exists a better forum for the resolution of the dispute between the parties." *SKY Technology Partners v. Midwest Research Institute*, 125 F.Supp.2d 286, 290–91 (S.D.Ohio 2000) *citing Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir.1980).

### A. Standard for Transfer to a More Convenient Forum

The standard for transfer of venue to a more convenient forum is found in 28 U.S.C. § 1404(a), which provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action

to any other district or division where it might have been brought.

Pursuant to Section 1404(a), the threshold consideration is whether the action "might have been brought" in the transferee court. An action "might have been brought" in a transferee court if:

a. The court has jurisdiction over the subject matter of the action

b. Venue is proper there, and

c. The defendant is amenable to process issuing out of the transferee court.

*SKY Technology*, 125 F.Supp.2d at 291 citing *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960).

In the case at bar, the district court in Louisiana would have diversity jurisdiction over this action since the parties are citizens of different states. 28 U.S.C. § 1332(a)(1). Further, Defendants' acknowledge that they would be subject to process in that district. Finally, venue would be proper in Louisiana under the general venue statute, 28 U.S.C. § 1391(a)(2), if "a substantial part of the events or omissions giving rise to the claim arose" there. *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir.1998). This is true even if a substantial part of the events giving rise to this claim are found to have been in Ohio. The fact that substantial activities took place in Ohio does not disqualify Louisiana as a proper venue as long as "substantial" activities took place in Louisiana too. *Id.* Louisiana should not be disqualified even if it is shown that the activities in Ohio were more substantial. *Id.* Clearly, a substantial part of the events in this case took place in Louisiana. Thus, Louisiana is a proper venue for this case. Consequently, this case could have been brought in Louisiana.

Once it is determined that a case could have been brought in the transferee court,

the issue becomes whether transfer is justified under the balance of the language of Section 1404(a) which analyzes whether transfer is justified for "the convenience of parties and witnesses" and "in the interest of justice." The factors to be considered under Section 1404(a) are similar to those weighed by courts in determining *forum non conveniens* motions; however, transfers pursuant to Section 1404(a) may be granted "upon a lesser showing of inconvenience." *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

 The moving party has the burden of establishing the need for a transfer of venue. *Mead Data Central, Inc. v. West Publishing Co.*, 679 F.Supp. 1455, 1457 (S.D.Ohio 1987); *Blane v. American Inventors Corp.*, 934 F.Supp. 903, 907 (M.D.Tenn.1996). Courts are to consider both the private interests of the litigants and the public's interest in the administration of justice. *Gulf Oil v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The litigants' interests include:

> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of the case easy, expeditious, and inexpensive.

*Id.* at 508, 67 S.Ct. 839. Public interests include:

> Docket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law.

*Id.* This Court has also considered additional factors when evaluating whether transfer is appropriate under Section 1404(a). These additional factors include "the nature of the suit; the place of the events involved; ... and the residences of the parties." *Sky Technologies,* 125 F.Supp.2d at 291; *Midwest Motor Supply Co., Inc. v. Kimball,* 761 F.Supp. 1316, 1318 (S.D.Ohio 1991); *Shapiro v. Merrill Lynch & Co.,* 634 F.Supp. 587, 589 (S.D.Ohio 1986)..

■ The balance of convenience, considering all the relevant factors, "should be strongly in favor of a transfer before such will be granted." *First Bank of Marietta v. Bright Banc Savings Assoc.,* 711 F.Supp. 893, 896–97 (S.D.Ohio 1988). The decision of whether to grant a change of venue, however, ultimately lies within the sound discretion of the district court. *Hanning,* 710 F.Supp. at 215.

### B. Application

Plaintiff objects to transfer to Louisiana. Plaintiff argues that the injury to him occurred "in Ohio and next Arizona." Plaintiff contends that the injury in this case was not the fire or the theft, rather, it is the denial by Scottsdale to pay for the property that was destroyed and stolen. Plaintiff contends that the submission of the two insurance claims and the investigation of the two claims occurred in Ohio, and, that the insurance policy was signed and accepted in Ohio.

Further, Plaintiff claims that several witnesses are in Ohio and that he cannot afford the cost of transporting those witnesses to Louisiana. Plaintiff also contends that, because he is the plaintiff in this case, his choice of forum should be given considerable weight. Finally, Plaintiff claims that it is Ohio law that governs this claim.

Defendants argue that the Eastern Division of Louisiana would be a more convenient forum. Defendants claim that the majority of witnesses to this action reside in Louisiana and that the destroyed and/or stolen property which is at the heart of this case was destroyed and/or stolen in Louisiana. The location from which the property was destroyed and/or stolen is Louisiana and it may be important for a jury to view the property. The commercial insurance policy named the Rose Café as the insured, not Plaintiff, and was issued as a result of contacting a Louisiana insurance broker, Gallodoro, in Louisiana. Further, both Jamhour, the owner of the Rose Café and Gallodoro are Louisiana corporations, doing business in Louisiana. Defendants claim that neither of them could have reasonably expected to be sued in Ohio as a result of insuring a small Louisiana café that was the sole asset of a Louisiana corporation which never had any employees or conducted any business outside of the state of Louisiana.

Defendants also argue that for Plaintiff to recover it must be determined that a fire and/or theft occurred at the Rose Café in Louisiana and that property owned by Jamhour, Incorporated, doing business as Rose Café, was damaged or lost as a result of the fire and/or alleged theft. Defendants contend that if this case proceeds to trial, Plaintiff must prove that the fire caused greater damage for which Plaintiff was not reimbursed and also that the policy required payment for the alleged theft. Defendants assert that paramount to this issue will be evidence as to the income, debts, and viability of the Rose Café during its operation and its likely income should the fire not have occurred. Finally, Defendants contend that it is Louisiana law that applies to this action.

### 1. Litigants' Interests

■ "The plaintiff's choice of forum is to be given considerable weight and the bal-

ance of convenience, considering all of the relevant factors, should be strongly in favor of a transfer before such will be granted." *Hanning*, 710 F.Supp. at 214 (citing *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951)). A plaintiff's choice of forum, however, is entitled to somewhat less weight when the case is removed to federal court because the plaintiff is no longer in his or her chosen forum, which was state court. *SKY Technology*, 125 F.Supp.2d at 292; *Neff Athletic Lettering Co. v. Walters*, 524 F.Supp. 268, 273 (S.D.Ohio 1981). Technically, Plaintiff did not chose this Court, since the action was originally filed in the Common Pleas Court for Franklin County, Ohio; therefore, Plaintiff's choice of forum, while relevant to the issue of transfer, is not entitled to the substantial weight that it otherwise might receive.

The ease of access to proof and the possibility of view of the premises clearly favors Louisiana. The Rose Café is located in Louisiana. The insured property was destroyed and/or allegedly stolen from Louisiana. Any police and fire department reports are in Louisiana as well as the police officers and fire fighters and fire investigators who prepared the reports and conducted the investigations. Further, only if the trial was in Louisiana would a view of the premises be possible.

The Eastern District of Louisiana also has subpoena power over all parties in this case. Jamhour and Gallodoro are both Louisiana corporations with their places of business in Louisiana; Plaintiff, is the sole shareholder of Jamhour, a Louisiana corporation; and Scottsdale does not dispute that it is required to defend this case in Louisiana.

The following are the Ohio witnesses, and their expected testimony, to be called by Plaintiff: Hendrix and an unnamed record keeping employee of Wasserstrom to testify that Plaintiff purchased equipment from Wasserstrom and loaded it onto a Ryder truck; Michael Paxton and other unnamed witnesses who allegedly either worked at Wasserstrom or allegedly helped load the equipment onto the Ryder truck; Joseph Keel, Operations Manager at Wasserstrom to testify that Plaintiff purchased equipment and that the record of any business with Plaintiff is lost; unnamed insureds of Scottsdale to testify that they had claims similar to Plaintiff's paid by Scottsdale; three witnesses to testify as to the residency of Plaintiff and one to testify as to the fact that he had a valid driver's license; a now bankrupt business, Sun T.V. to testify as to purchase of electronics by Plaintiff; Plaintiff's attorney;[2] and, Plaintiff himself. (*Plaintiff's Memorandum Contra Defendants' Motion for Transfer of Venue*, at 12–13; Docs. ## 6, 18, 22, 44).

The following are the Louisiana witnesses, and their expected testimony, to be called by one or both parties: Vee Fritcher, general insurance agent, to testify as to the processing and securing of the insurance policy on the Rose Café; Ken Cambre, insurance adjuster for Scottsdale, to testify as to the inspection made after the fire at the Rose Café; James Fontenelle to testify as to the lease between himself and Plaintiff for the Rose Café, the equipment (and its condition) that he personally observed in the Rose Café, the damage to the equipment and the premises after the fire, and the condition of the premises which housed the Rose Café after the alleged theft; Steve Favulora, who helped Plaintiff build the Rose Café, to testify as to the equipment that was used in the

---

**2.** The Court cautions Plaintiff's attorney to bear in mind the Model Code of Professional Responsibility DR 5–102, which a prohibits a lawyer from testifying on behalf of her client. *155 North High, Ltd. v. Cincinnati Ins. Co.*, 72 Ohio St.3d 423, 427, 650 N.E.2d 869 (1995).

Rose Café and as to the ownership of said equipment; Adnan Atari, Plaintiff's sole employee at the Rose Café, to testify as to whether he signed the application for insurance for the Rose Café; a representative of the Sheriff's department and from the Fire Department who extinguished the fire at the Rose Café and investigated the fire and the alleged theft; and, Defendant Gallodoro. (*Defendants' Motion for Transfer of Venue*, at 10–12; Doc. # 6).

■ The main issues to be decided by a Court in this case are: First, what equipment was in the Rose Café and its condition, new or used; Second, what was the extent of the damage to the equipment in the Rose Café after the fire; Third, did a theft actually occur at the Rose Café; and, Fourth, what coverage did Gallodoro represent he procured for Plaintiff.[3] The vast majority of the witnesses to testify to these issues are in Louisiana. The only Ohio witnesses whose testimony is relevant to these issues are the Wasserstrom employees who will testify that Plaintiff bought restaurant equipment and loaded it onto a Ryder truck. It seems to the Court, however, that even if Plaintiff does prove that he purchased restaurant equipment, the more important issue is whether that equipment was in Louisiana in the Rose Café. All witnesses, except for Plaintiff, who can testify as to what equipment was in the Rose Café before and after the fire and before and after the alleged theft are in Louisiana. Thus, the Court finds that the convenience of witnesses factor weighs in favor of transfer to Louisiana.

### 2. Public's Interests

Ohio and Louisiana both have relations to this cause of action. Ohio has an in-terest in protecting one of its citizens, Plaintiff. Plaintiff, however, reached into Louisiana to purchase insurance from a Louisiana business, for property located solely in Louisiana, in the name of a Louisiana corporation. Further, the underlying events which gave rise to this claim, that is the fire and alleged theft, occurred in Louisiana. Consequently, it is evident that Louisiana has several different relations to this litigation, and a stronger interest in holding trial there. Further, the value of holding trial in a community where the affected public live, favors trial in Louisiana. The Court concludes that Louisiana, and its citizens, have a stronger interest in having this case tried in Louisiana than Ohio has in having the case tried in Ohio.

As to the issue of docket congestion, the Court finds that neither side is favored. Foremost, the Court notes that none of the parties have briefed this issue at all. Thus, the Court has no evidence before it that either Ohio or Louisiana would be a favored forum based on this factor. *See SKY Technology*, 125 F.Supp.2d at 298 (finding same).

The issue of the Court's familiarity with the controlling law is a much more complex issue. While "[i]t is generally recognized that 'a diversity case should be decided by a court which is most conversant with the applicable state law[,]'" *Kimball*, 761 F.Supp. at 1318–19 (citations omitted), the applicable law in this case is a point of dispute. Although the parties have not fully briefed this argument, Plaintiff claims that Ohio law applies to this case, while Defendants argue that it is Louisiana law that is applicable. If Louisiana law ap-

---

**3.** Plaintiff also claims that his race and religion are at issue. Defendant, however, does not dispute that Plaintiff is of Arab descent and of the Muslim religion. (*Defendants' Mo-tion for Transfer of Venue*, at 12). Plaintiff has not listed witnesses whose testimony will bear on this issue independent of the witnesses described *infra*.

plies, then a district court which sits in Louisiana would be more conversant with the applicable law. Likewise, if Ohio law applies, then this Court would be more conversant with the law that applies to this case.

A federal court sitting in diversity must apply the law of the forum state, including its choice of law principles. *Klaxon Co. v. Stantor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Miller v. State Farm Mutual Automobile Ins. Co.*, 87 F.3d 822, 824 (6th Cir.1996). "When a diversity case is transferred from one federal court to another, the transferee court applies the same laws that the original court would have applied." *Polydyne, Inc. v. Kirk*, 238 F.3d 423, 2000 WL 1888654 (6th Cir.2000) (table decision) *citing Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Thus, whether this case is transferred or not, Ohio choice of law principles will apply. Accordingly, the Court begins by looking to Ohio choice of law rules to determine what state law to apply to this case.

The Ohio Supreme Court held that Ohio courts confronted with conflicts of law questions should apply the analysis set forth certain sections of the Restatement (Second) of the Law of Conflicts ("Restatement (Second) of Conflicts"). *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820 (6th Cir.1990); *Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St.3d 339, 342, 474 N.E.2d 286 (1984) (following the Restatement (Second) of Conflict of Laws in relation to tort claims); *Gries Sports Enterprises, Inc. v. Modell*, 15 Ohio St.3d 284, 473 N.E.2d 807 (1984) (following Sections 187 and 188 of the Restatement (Second) in relation to contract claims).

Ohio's choice of law rules, following the Restatement (Second) of Conflicts, depend on the classification of a given cause of action. *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 747 N.E.2d 206, 208 (2001) *citing* Restatement at 18, § 7, cmt. b. A court must classify the cause of action because different choice of law rules apply depending on whether the cause of action sounds in contract or in tort. *Compare Schulke Radio Prod., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 453 N.E.2d 683 (1983) (contract) *with Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St.3d 339, 474 N.E.2d 286 (1984) (tort).

### a. Contract Claims

Plaintiff asserts claims for breach of insurance contract. The Ohio Supreme Court has adopted sections 187 and 188 of the Restatement (Second) of Conflicts to analyze choice of law rules for contractual causes of action. *Schulke Radio Prod., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 453 N.E.2d 683 (1983) (adopting section 187); *Gries Sports Ent., Inc., v. Modell*, 15 Ohio St.3d 284, 473 N.E.2d 807 (1984) (adopting section 188). Section 187 of the Restatement (Second) of Conflicts provides that, subject to very limited exceptions, the law of the state chosen by the parties to a contract will govern their contractual rights and duties. The Restatement (Second) of Conflicts' Section 188 provides that, in the absence of an effective choice of law by the parties, their rights and duties under the contract are determined by the law of the state that has "the most significant relationship to the transaction and the parties."

To assist in determining which state has the most significant relationship to the parties to a contract, Section 188(2) of the Restatement (Second) of Conflicts sets forth the following contacts to be taken into account to determine the law applicable to an issue:

(a) the place of contracting;

(b) the place of negotiations of the contract;

(c) the place of performance;

(d) the location of the subject matter of the contract; and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These factors are to be considered in applying the principles as set forth by the Restatement of Conflicts Section 6. Section 6 provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems;

(b) the relevant policies of the forum;

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;

(d) the protection of justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability, and uniformity of result; and

(g) ease in the determination and application of the law to be applied.

█ "Turning to the application of the factors set forth in section 6 of the Restatement, [the Court] note[s] that, even when sections 6 and 188 are read together, it is clear they only provide a broad general framework for the resolution of choice of law issues...." *Medical Mutual of Ohio v. Denise deSoto*, 245 F.3d 561, 571 (6th Cir. 2001) *citing International Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 606 (6th

Cir.1996). Indeed, "within that framework, a judge must balance principles, policies, factors, weights, and emphases to reach a result, the derivation of which, in all honesty, does not proceed with mathematical precision." *Id.* Applying that framework to the this case, the Court concludes that Louisiana law applies. "If the factors in section 188 militate toward either state, it is toward [Louisiana] law." *Id.* The Court will address these factors in *seriatim.*

Contacts (a) and (b): the place of contracting and the place of negotiation are inconclusive and are relatively insignificant in this case. This Court, in addressing these two contacts in a case factually similar to the instant case, found that:

Factor (a) of Section 188 directs this Court to consider "the place of contracting," while factor (b) directs us to consider "the place of negotiations of the contract." The comments to Section 188 provide the Court with guidance on these factors: The place of contracting is a relatively insignificant contact.... The place of negotiation ... is of less importance where there is no one single place of negotiation and agreement, as for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone. Restatement (Second) of Conflicts § 188 cmt. e (1971). In the situation at hand, it has been suggested without refutation that negotiations were done by telephone in Georgia, England and Ohio. This information would render the first two factors inconclusive.

*International Insurance Co. v. Stonewall Insurance Co.*, 863 F.Supp. 599 604 (S.D.Ohio 1994) *aff'd* 86 F.3d 601 (6th Cir. 1996). Similarly, the case *sub judice* was negotiated by telephone between Louisiana, Ohio, and Arizona. Thus, these first

two factors do not weigh in favor of either state as a forum.

Contact (c): the place of Plaintiff's performance is arguably in Ohio, by making payment of the insurance premium form there. Gallodoro performed in Louisiana, by procuring the insurance from its Louisiana office and selling that insurance to Plaintiff from its Louisiana office. Scottsdale arguably performed in Arizona by issuing the commercial policy from its office in Arizona, and arguably performed in Louisiana by protecting property located in Louisiana. Only slight contacts are with Ohio, with this factor leaning towards transfer to Louisiana.

Contact (d): the location of the subject matter of the contract is unquestionably Louisiana. The Court finds this contact quite important in the type of contract at issue in the instant case. Plaintiff secured a policy from Defendants for the purpose of protecting goods solely in Louisiana. Defendants clearly have a justified expectation to litigate in Louisiana, while Plaintiff cannot seriously claim surprise as to this forum. *See* Restatement (Second) of Conflicts § 6. Consequently, this factor

weighs heavily in favor of transfer to Louisiana.

Contact (e): the domicile, residence, nationality, place of incorporation and place of business of the parties weighs heavily toward Louisiana. The only Ohio contact in these factors is the residence of Plaintiff. Thus, this factor weighs heavily in favor of transfer to Louisiana.

In sum, the Court finds that based on the above analysis, Louisiana law applies to Plaintiff's contract claims.[4] Consequently, this factor weighs heavily in favor of transfer to the Eastern District of Louisiana, the federal court most conversant with Louisiana state law.

### b. Negligent Misrepresentation

The Ohio Supreme Court has also applied the Restatement (Second) of Conflicts to determine the law that applies in tort actions. *Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St.3d 339, 342, 474 N.E.2d 286 (1984). Plaintiff claims negligent misrepresentation against Gallodoro. Section 148 of the Restatement (Second) of Conflicts governs choice of law for claims of misrepresentation. *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820–21 (6th Cir. 1990) (applying Section 148 to a case using

---

4. The Court notes that the Restatement (Second) of Conflicts sets forth a section which specifically deals with insurance contracts. Section 193 provides:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are *determined by* the local law of the state which the parties understood was to be *the principal location of the insured risk* during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflicts § 193 (emphasis added). Neither the Ohio Supreme Court, nor any lower Ohio court, has specifically adopted this section of the Restatement

(Second) of Conflicts. The Sixth Circuit has declined to decide whether, under the principles governing a federal court's determination of state law, Ohio would apply Section 193. *International Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 606, 606 n. 2 (finding that the contract at issue was not a pure indemnification contract to which Section 193 applies, thus it was unnecessary to decide whether the Ohio courts would apply Section 193). Section 193 clearly dictates that Louisiana law would apply to the contract at issue in the case at bar. Because of this Court's conclusion that Louisiana law applies under application of Section 188 of the Restatement (Second) of Conflicts, however, it is similarly unnecessary to decide whether or not the Ohio courts would adopt Section 193 of the Restatement (Second) of Conflicts.

Ohio's conflict of laws rules). Section 148 of the Restatement (Second) of Conflicts provides:

(1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

(2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicile, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

The Court will address each contact in *seriatim*.

■ Contact (a): the place of Plaintiff's reliance is both Ohio and Louisiana. Plaintiff relied on the contract of insurance in Ohio by binding himself to it from Ohio, as well as by no longer seeking insurance once he relied on Gallodoro and Scottsdale. Plaintiff, however, also acted in reliance in Louisiana by placing the insured property at the Rose Café "Plaintiff's action in reliance provides a more important contact when it is confined to a single state than when it is divided among two or more." Restatement (Second) of Conflicts § 148 cmt. f. Plaintiff's acts of reliance take place in more than one state. Thus, this contact favors neither Ohio nor Louisiana as a forum.

Contact (b): the place where plaintiff received the representations was in Ohio, and consequently, this contact weighs heavily in favor on non-transfer.

Contact (c): the place where Defendant made the representation was Louisiana. This contact it "as important a contact in the selection of the law governing actions for . . . misrepresentation as is the place of the defendant's conduct in the case of injuries to persons or to tangible things". Restatement (Second) of Conflicts § 148 cmt. c. "The making of the representations provides a more important contact when the representations are made only in one state than when they are made in two or more." *Id.* at cmt g. Gallodoro's representations were made from only one state. Thus, this contact weighs heavily in favor of transfer.

Contact (d): the domicile, residence, nationality, place of incorporation and place of business of the parties weighs heavily in favor of transfer to Louisiana. The only contact in favor of Ohio is the domicile of

Plaintiff. Consequently, this contact weighs in favor of transfer.

Contact (e): the place where a tangible thing which is the subject of the transaction between the parties was situated at the time strongly favors transfer to Louisiana, since that is the state where the insured property was wholly located.

Contact (f): the place where the plaintiff is to render performance under a contract which he has allegedly been induced to enter by the false representations of the defendant is unclear. As discussed under contact (c) of the choice of law analysis as it applies to contracts supra, the place of Plaintiff's performance is arguably Ohio and Louisiana. Thus, this factor does not weigh in favor of either state as a forum.

In sum, the Court finds that based on the above analysis, Louisiana law applies to Plaintiff's tort claim. Consequently, this factor weighs heavily in favor of transfer to the Eastern District of Louisiana, the federal court most conversant with Louisiana state law.

Based on the foregoing, the Court concludes that the public interests in this case favor transfer to Louisiana.

### 3. Additional Factors

The residency of the parties does not weigh in favor of either side. Plaintiff and both Defendants reside in three different localities. Plaintiff, however, has moved to amend his Complaint to include Steve Favulora, a resident of Louisiana. (Doc. # 42). Thus, the Court concludes that the residency of the parties weighs slightly in favor of transfer to Louisiana.

The nature of this suit and the place of the events involved are intertwined. This suit lies in tort and in contract. The events giving rise to this case are disputed. Plaintiff claims that the injury occurred in Ohio because he was injured by non-pay-ment of his insurance claims and he is in Ohio. Further, the submission of the two insurance claims and the investigation of the two claims took place in Ohio. The Court is not convinced by Plaintiff's assertion.

The injury to Plaintiff was not only non-payment of the insurance claims of the Rose Café. The initial injury was the destruction and/or theft of his property. If this injury had not occurred, this case would not have been brought. This destruction and/or theft necessitated claims to be filed under his commercial policy. His insurer, Scottsdale, disputes the extent of the injury and disputes that a theft occurred at all. The investigation of the claims at issue in this case took place in Louisiana. The fire and the alleged theft occurred in Louisiana and Scottsdale's investigator surveyed the losses at the Rose Café in Louisiana. Thus, the nature of the suit and the events involved weigh in favor of transfer to Louisiana.

In conclusion, the Court finds that in the interest of the litigants, the public, and the additional factors considered relevant to transfer in this district, transfer of this case is warranted.

### IV. MOTION TO STRIKE

Plaintiff Motions the Court to strike portions of the Affidavit of Joseph Gallodoro. (Doc. # 43). The Court, however, did not find it necessary to rely on Joseph Gallodoro's affidavit in its consideration of Defendants' Motion for Transfer of Venue. Gallodoro's Affidavit testimony will not be at issue until such time, if ever, as the parties move the district court in Louisiana to decide this case on dispositive motions. Consequently, Plaintiff's Motion to Strike is denied.

## V. CONCLUSION

In light of the foregoing, the Court concludes that Plaintiff's Motion to Strike is **DENIED** without prejudice to refiling in the Eastern District of Louisiana. (Doc. # 43). Defendants' Motion to Transfer is **GRANTED.** (Doc. # 25). This action is hereby **ORDERED TRANSFERRED** to the United States District Court for the Eastern District of Louisiana.

**IT IS SO ORDERED.**